CHARLES GERMAN *v.* STATE OF INDIANA.

[No. 3-674A108. Filed October 30, 1975. Rehearing denied December 4,
1975. Transfer denied March 7, 1976.]

*J. Patrick Smith,* of LaPorte, *Paul J. Baldoni,* of LaPorte, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrell K. Diamond,* Deputy Attorney General, for appellee.

HOFFMAN, J.—Defendant-appellant Charles German was convicted of the crime of involuntary manslaughter following a trial before a jury. His motion to correct errors was overruled by the trial court, and he perfected this appeal.

On appeal, German contends that there was insufficient evidence adduced at trial to support his conviction in that proof of his intent to point a firearm at the decedent was a necessary element of the crime with which he was charged, and there was no evidence introduced at trial tending to establish such an intent.

IC 1971, 35-13-4-2, Ind. Ann. Stat. § 10-3405 (Burns Supp. 1974), provides, in pertinent part:

"Involuntary Manslaughter. Whoever kills any human being without malice, expressed or implied, involuntarily but in the commission of some unlawful act, is guilty of involuntary manslaughter, and, on conviction, shall be imprisoned in the state prison for not less than one [1] nor more than ten [10] years: * * *."

The plain wording of IC 1971, 35-13-4-2, *supra*, requires the commission of an unlawful act resulting in a homicide to give rise to criminal culpability.

In the case at bar, the particular unlawful act which the indictment alleged that German committed was that he "did * * * purposely point or aim a revolver at and toward another person. * * *." Such an act is proscribed by IC 1971, 35-1-79-5, Ind. Ann. Stat. § 10-4708 (Burns Supp. 1974), which provides, in pertinent part:

"Aiming weapons.—It shall be unlawful for any person over the age of ten [10] years, with or without malice, purposely to point or aim any pistol, gun, revolver or other firearm, either loaded or empty, at or toward any other person; * * *."

The language of IC 1971, 35-1-79-5, *supra*, requiring that the pointing of a firearm be purposeful was considered by our Supreme Court in *Eaton* v. *State* (1904), 162 Ind. 554, 70 N.E. 814. Therein, the court, at 556-57 of 162 Ind., at 814 of 70 N.E., stated:

". . . [appellant's] counsel contend that the *gravamen* of the offense described or defined by the section in question is that the pointing or aiming of the pistol must be purposely or intentionally done on the part of the accused person. * * *. It will be seen that the statute declares it to be an unlawful act for anyone over the age of ten years 'purposely to point or aim any pistol,' etc. 'Purposely' as therein used means intentionally or designedly. *Fahnestock* v. *State*, 23 Ind. 231."

Also, see, *Lange* v. *The State* (1884), 95 Ind. 114; *Graham* v. *The State* (1894), 8 Ind. App. 497, 35 N.E. 1109.

It must be concluded that proof of an intent or design by German to point a weapon at the decedent was essential to

sustain the charge against him. Accordingly, it must be determined whether such element was established by the evidence introduced at trial.

Appellee State concedes that there is no direct evidence in the record as to this issue. It asserts, however, that such element could have been inferred by the trier of fact from certain circumstantial evidence which was introduced at trial.

When questions concerning the sufficiency of evidence are presented on appeal, this court may consider only that evidence which is most favorable to the State, together with all logical and reasonable inferences which may be drawn therefrom. Further, it is not our function to weigh the evidence or determine the credibility of witnesses. *McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554. It has been held that a conviction may be sustained upon circumstantial evidence alone so long as the evidence is of such probative value that a reasonable inference of guilt may be drawn therefrom. *Gregory* v. *State* (1972), 259 Ind. 295, 286 N.E.2d 666. A conviction which rests in whole or in part upon such evidence will not be reversed unless this court can state as a matter of law that reasonable persons, whether they be the jury or the trial court, could not form inferences with regard to each material element of the offense so as to ascertain a defendant's guilt beyond a reasonable doubt. *Guyton* v. *State* (1973), 157 Ind. App. 59, 299 N.E.2d 233.

In the recent case of *Gaddis* v. *State* (1969), 253 Ind. 73, 251 N.E.2d 658, Justice Hunter, speaking for our Supreme Court, summarized the rules of law stated hereinabove regarding the sufficiency of the evidence in criminal cases, and then spoke of the duties of an appellate court in examining such questions as follows:

> "Although this court must be careful not to confuse its function and purpose with that of the trial court, we nevertheless should be equally as careful not to be found in derogation of our duties as an appellate tribunal, monitor-

ing with a watchful eye the administration of justice on the trial court level.

"Judge Emmert very ably defined the tests to be used when determining the sufficiency of the evidence question in *Baker* v. *State* (1956), 236 Ind. 55, 138 N.E.2d 641, where he carefully documents each proposition of law with numerous citations to previously decided Indiana cases. We shall not attempt to duplicate that effort in this opinion. In re-affirming the tenure [tenor] of that opinion however, we would again note the basic premise from which this court begins its inquiry, namely that a defendant is presumed innocent until proven guilty. From that point on, in determining whether each material allegation of the offense is suppported by substantial evidence of probative value we are guided by the following caveats:

(1) To prove an essential allegation beyond a reasonable doubt requires more evidence than to prove an allegation by a preponderance of the evidence.

(2) When there is a reasonable doubt whether defendant's guilt is satisfactorily shown, he must be acquitted.

(3) *Substantial* evidence means more than *seeming* or *imaginary*.

(4) The scintilla of evidence rule does not obtain in this jurisdiction.

(5) Mere suspicion of guilt or opportunity to commit the crime are insufficient to support a conviction.

*Baker* v. *State, supra,* and cases there cited.

"The essence of the above as it relates to the quantum of proof required to convict a person of a criminal offense is very aptly summed up as follows:

'The rule of law defining proof beyond a reasonable doubt has been well settled for many years and requires each juror to be so convinced by the evidence that as a prudent man he would feel safe to act upon such conviction in matters of the highest concern and importance to his own dearest and most important interests, under circumstances where there was no compulsion or coercion upon him to act at all. *Chambers* v. *State* (1953), 232 Ind. 349, 356, 111 N.E.2d 816; *Morgan* v. *State* (1921), 190 Ind. 411, 130 N.E. 528; *Bradley* v. *State* (1870), 31 Ind. 492.' *Baker* v. *State, supra,* p. 644, 645.

"Mindful of the above, this court must make its determination on the record of the evidence submitted in each particular case. As we said most recently in *Liston* v. *State* (1969), 252 Ind. 502, 250 N.E.2d 739, a recognition of our appellate responsibilities in this regard may require a probing and sifting of the evidence to determine whether the residue of facts warrants a conviction; where such residue fails to meet the requirement that each material allegation be supported by substantial evidence of probative value, we should so declare." (At 76-77 of 253 Ind., at 659-60 of 251 N.E.2d).

The facts of this cause as established by the evidence and reasonable inferences therefrom most favorable to appellee State disclose that on October 26, 1973, German was employed at Beatty Memorial Hospital and lived in an employees' residential center at such facility. He had been spending "a lot of time" socially with another employee of the hospital, Janet Eiler, who also resided in such residential center.

Miss Eiler normally completed her workday at 4:30 P.M. On the evening in question she returned to the employees' center after work but did not immediately proceed to her room. At some time shortly after the end of the workday, a gunshot was heard by a resident of the employees' center.

Shortly thereafter, appellant German came to a security guard in the lobby of the building and asked him to call the police. When asked why, German stated: "Well, its an accident. The gun went off and I know the girl is dead." Appellant then returned to his room briefly, and later directed two nurses to such room. There, the nurses discovered Janet Eiler's body.

The decedent had sustained one gunshot wound high on her forehead. A revolver belonging to appellant which could have been used in the shooting was discovered beneath his pillow in his room. However, it bore no identifiable fingerprints. Additionally, evidence was introduced establishing that such firearm has a substantial recoil when fired, and

that it bore no marks indicating that it had been thrown against a wall or other hard surface.

The question for determination is whether the foregoing evidence is such that a reasonable man could have inferred an intent on German's part to point a firearm at the decedent. The State, in its brief, has offered the following reasoning to show that such an inference could have been drawn by the jurors as reasonable men:

> "The revolver, a .357 Magnum, has a strong recoil. There were no marks or other indication on the weapon such as to indicate that it had dropped or struck any hard surface such as a floor or wall. An inference can therefore be drawn that the forearm must have been extended in a generally horizontal position with the hand firmly grasping the weapon."

It is apparent that this rationale requires inferences to be drawn from inferences. Even assuming that appellant held the gun, it must be inferred from the position of the decedent and the wound that he did so in a normal manner. Further, it must be inferred from the lack of marks on the weapon that it was fired at a time when appellant was prepared for the resultant recoil. Then from these inferences, it must be inferred that appellant not only held the gun firmly and discharged it, but also intentionally pointed such firearm at the decedent.

Upon an examination of the evidence of this cause, it must be conceded that there are inferences to be drawn which might lead one to the conclusion that appellant was present at the time of the shooting, and perhaps even that he held the gun in some manner at such time. However, while such evidence demonstrates that appellant had an opportunity to commit the crime with which he was charged, it does no more than raise a mere suspicion of guilt. Guilt must be proven beyond a reasonable doubt. Even upon a consideration of only that evidence in the record before us most favorable to the State, there is no substantial evidence of probative value

from which the jury as reasonable men could have inferred beyond a reasonable doubt that appellant pointed a weapon intentionally. Due to such failure of proof, appellant's conviction must be reversed. *Blackburn* v. *State* (1973), 260 Ind. 5, 291 N.E.2d 686.

Additionally, it should be noted that this record is entirely devoid of any suggestion of a motive for the shooting. While motive is not an element of any of the degrees of homicide, *Robinson* v. *State* (1974), 262 Ind. 463, 317 N.E.2d 850, this factor is significant in the case at bar for two reasons: 1) as stated by our Supreme Court in *Osbon* v. *State* (1938), 213 Ind. 413, at 425, 13 N.E.2d 223, the absence of motive in a homicide case is a powerful circumstance tending to exculpate a defendant when the State's proof is entirely by circumstantial evidence; and 2) those Indiana cases which have approved an inference of intent from facts similar to those now before the court have relied in some measure on the existence of a motive for the homicide as the basis for such inference. *See, e.g., Thomas* v. *State* (1973), 260 Ind. 604, 298 N.E.2d 425; *Fausett* v. *State* (1942), 219 Ind. 500, 39 N.E.2d 728. *Cf: Chatman* v. *State* (1975), 263 Ind. 531, 334 N.E.2d 673.

In the case at bar there were no eyewitnesses to the shooting, and the appellant chose not to testify at trial. While this court comprehends the difficulties encountered by the prosecution in such a case, these factors cannot justify a departure from the recognized standards of appellate review. Appellant's conviction must be reversed, and this cause remanded to the trial court.

Reversed and remanded.

Garrard, J., concurs.

Lybrook, J. (participating by designation) concurs.

NOTE.—Reported at 337 N.E.2d 883.