Elmo T. HADLEY, Appellant,

v.

STATE of Indiana, Appellee.

No. 1084S385.

Supreme Court of Indiana.

Aug. 8, 1986.

Susan K. Carpenter, Public Defender, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Following a jury trial, appellant Elmo T. Hadley was convicted of murder, Ind.Code § 35–42–1–1 (Burns 1985 Repl.), and found to be an habitual offender, Ind. Code § 35–50–2–8 (Burns 1985 Repl.). His 50–year sentence on the murder charge was enhanced by 30 years as a result of the habitual offender finding.

Hadley raises twelve issues in this direct appeal:

1) The sufficiency of the evidence on the murder charge;

2) Whether the court erred in refusing to admit a report of an investigating officer's telephone conversation with Hadley's brother;

3) The adequacy of the court's efforts to determine Hadley's competency;

4) Whether the court improperly admitted portions of his grand jury testimony;

5) The court's denial of his motion for change of venue;

6) Whether the court properly denied Hadley's motion for individual voir dire and sequestration of jurors during voir dire;

7) The adequacy of the hearing on Hadley's motion to suppress identification evidence;

8) Whether photographs of Hadley's arrest and others showing the autopsy of the victim were properly admitted;

9) Whether the court erred in permitting the State to call a "surprise witness" to testify during the habitual offender proceedings;

10) Whether the court correctly admitted a transcript of a hearing in which Hadley acknowledged prior felony convictions;

11) The sufficiency of the evidence on the habitual offender question.

The facts most favorable to the judgment are as follows. Elmo Hadley lived in Elkhart with his father, Reverend Theodius Hadley, his mother Jannie Mae Hadley, and his sister Clara. Hadley stayed in the

basement of his parents' home and rarely ate meals with his family.

Hadley's parents became ill several hours after eating Sunday dinner on February 27, 1983. They complained of flu-like symptoms. Throughout the following week, their illness recurred whenever they ate or drank. Soon after Clara returned from a weekend trip, she became ill. Two of the Hadley's grandchildren subsequently stayed at the Hadley home and also became ill. The parents' condition failed to improve, and they were hospitalized on Saturday, March 5. Tests showed they were suffering from low blood pressure and dehydration, symptoms of arsenic poisoning.

The Hadleys normally drank distilled water, rather than tap water. At the hospital, Reverend Hadley drank the hospital's tap water, but his wife drank from a bottle of distilled water brought from their home. Mrs. Hadley's condition deteriorated, and she died on March 13. Reverend Hadley eventually recovered. Subsequent tests showed that arsenic poisoning caused Mrs. Hadley's death and the illness of her husband and daughter. Investigators found arsenic in a distilled water bottle discarded in the Hadleys' garage and in the bottom of a glass in their bedroom.

## I. *Sufficiency of the Evidence*

Hadley contends the evidence at trial was insufficient to support the jury's determination that he poisoned his mother. He claims the "credible" evidence shows merely a nonexclusive opportunity to commit the crime, together with a suspicion among family members that Hadley was the killer. Hadley also claims that the prosecution failed to prove that he possessed the requisite intent to commit murder because the evidence showed he was *non compos mentis.*

He concedes that this Court will neither reweigh the evidence nor judge the credibility of witnesses, except where the evidence most favorable to the State is so devoid of probative evidence as to preclude a finding of guilt beyond a reasonable doubt. *Liston v. State* (1969), 252 Ind. 502, 250 N.E.2d 739. A verdict will be upheld if the evidence and all reasonable inferences drawn therefrom, as viewed most favorable to the State, establish the existence of each element of the crime beyond a reasonable doubt. *Fordyce v. State* (1981), Ind., 425 N.E.2d 108.

Hadley urges the Court to discard testimony about his alleged confessions to a jail officer and to a former cellmate because they are "inherently incredible." The jail officer waited more than two months to report the confession which Hadley allegedly made while being transported to a doctor's office. The former cellmate had previously revealed jailhouse confessions in return for judicial leniency and the charges pending against the cellmate at the time of Hadley's trial were dismissed in exchange for his testimony about Hadley's alleged confession. Nevertheless, defense counsel had ample opportunity to reveal any questionable aspects of the testimony during cross-examination. The challenged veracity of the witnesses was a matter for the jury to weigh; it did not bar admission of the testimony.

Even without the testimony about Hadley's confessions, sufficient evidence existed to convict him of murder. Several employees of a Kokomo drug store testified that they saw Hadley purchase a total of six yellow bottles of a colorless, liquid ant poison during three shopping expeditions in February and early March of 1983. They said Hadley attempted to conceal the label of the ant poison bottles when he paid for them. The ant poison contained arsenic. Hadley's father saw Hadley try to conceal a yellow can at their home. Soon after the poison purchase, Hadley's parents became ill. He was the only person in the home who remained unaffected.

Hadley argues that the fatal dose of arsenic probably came in the bottle of distilled water which Mrs. Hadley requested from her hospital bed. He notes that his brother, Isaac, delivered the bottle to their mother. Notwithstanding appellant's attempt to blame his brother, the test of the sufficiency of the evidence in a homicide

prosecution is not whether someone else *could* have committed the crime. Instead, where the evidence is circumstantial, the reviewing court need find only that the jury could draw from the evidence an inference reasonably tending to support the finding of guilt of the defendant. *McCraney v. State* (1983), Ind., 447 N.E.2d 589. This standard was met. Conjecture about uncharged potential suspects simply is not enough to overturn a jury verdict.

■ Equally unpersuasive is Hadley's argument that the prosecution failed to prove intent. The State used evidence of Hadley's strange behavior and beliefs (he often called his parents and siblings "impostors" and "aliens") to establish a motive for the poisoning. Existence of a motive for homicide may provide the basis for an inference of intent. *German v. State* (1975), 166 Ind.App. 370, 337 N.E.2d 883. Hadley argues that evidence of his delusions showed he was *non compos mentis* and therefore incapable of forming the necessary intent.[1] To convict a person of murder, the prosecution must prove beyond a reasonable doubt that the defendant *knowingly* or *intentionally* killed another human being. *Bixler v. State* (1984), Ind., 471 N.E.2d 1093, *cert. den.,* — U.S. —, 106 S.Ct. 106, 88 L.Ed.2d 86.

Appellant cites two recent cases in which we explained that one who is *non compos mentis* cannot form intent to commit a crime. *Sills v. State* (1984), Ind., 463 N.E.2d 228; *Terry v. State* (1984), Ind., 465 N.E.2d 1085. These cases provide little support for Hadley's position because both involve intoxication defenses. Furthermore, in *Terry v. State,* we held that a person would not be relieved of responsibility for his actions "when he was able to devise a plan, operate equipment, instruct the behavior of others or carry out acts requiring physical skill." *Id.,* 465 N.E.2d at 1088. Hadley was employed full-time at the time of his parent's death. He was alert enough to buy poison which would not

be detected without laboratory tests. He was conscious enough of his illegal conduct to try to conceal the poison at the time of purchase. He subsequently implemented a devious plan to kill his parents. His intent to murder his mother—as well as his father—was painfully clear. A *non compos mentis* argument is not properly raised in this context.

The evidence was sufficient to support the jury's determination that all elements of the crime were proven beyond a reasonable doubt.

## II. *Admission of a Police Report*

In another effort to implicate his siblings, Hadley offered a report of an investigating officer's telephone conversation with Theodis Hadley, Jr., appellant's brother. Hadley claimed it would show that Theodis was uncooperative with the police but was never investigated as a suspect. The court refused to admit the police report, ruling that it was hearsay and irrelevant. The court did allow testimony concerning the report but prohibited any mention of the content of the telephone conversation between Theodis and the officer.

Hadley contends that that the document was not hearsay or, alternatively, that the report falls within the business records exception to the hearsay rule. Hearsay is an out-of-court statement, whether verbal or written, offered at trial to prove the truth of the matter stated therein. *Mulligan v. State* (1986), Ind., 487 N.E.2d 1309.

■ We need not address the merits of this issue because appellant has waived his argument by failing to include the officer's report in the record. Error alleged but not disclosed by the record is not a proper subject for review. *State v. Irvin* (1973), 259 Ind.App. 610, 291 N.E.2d 70. Furthermore, Hadley was able to elicit through the testimony of the investigating officer evidence that Theodius did not cooperate with police and was not investigated. Hadley

---

1. A survey of Indiana cases does not provide an explicit definition of *non compos mentis.* According to Black's Law Dictionary, 948 (5th ed. 1979), *non compos mentis* means "Not sound of mind; insane. This is a very general term embracing all varieties of mental derangement."

has shown no prejudice and cannot claim error.

### III. *Hadley's Competency*

Appellant claims that the trial court violated Ind. Code § 35–36–3–1 by failing to conduct a hearing after Hadley's counsel filed a motion to determine competency. At that time, the statute provided in relevant part:

(a) If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two (2) competent, disinterested psychiatrists, who shall examine the defendant and testify at the hearing as to whether he can understand the proceedings and assist in the preparation of his defense.

(b) At the hearing, other evidence relevant to whether the defendant has the ability to understand the proceedings and assist in the preparation of his defense may be introduced. If the court finds that the defendant has the ability to understand the proceedings and assist in the preparation of his defense, the trial shall proceed. If the court finds that the defendant lacks this ability, it shall delay or continue the trial and order the defendant committed to the department of mental health, to be confined by the department in an appropriate psychiatric institution.

■ · A competency hearing is required under the statute when the trial court "has reasonable grounds for believing" the defendant may not be competent to stand trial. We review such determinations for abuse of discretion. *Goodman v. State* (1983), Ind., 453 N.E.2d 984. The presence of indicators sufficient to require the court to conduct a hearing under Ind. Code 35–36–3–1 must be determined upon the facts of each case. *Id.* In response to defense

counsel's motion, the trial judge appointed two psychiatrists to examine Hadley. The trial judge received written opinions from the psychiatrists that Hadley was competent, but he did not conduct a competency hearing.

After the psychiatrists' reports were received, Hadley did not complain in any way or attempt to schedule a hearing. Considering that both psychiatrists found Hadley competent, we are unable to see what prejudice resulted from the trial court's failure to conduct a competency hearing. Moreover, in *Montague v. State* (1977), 266 Ind. 51, 360 N.E.2d 181, we held that no competency hearing was required where two court-appointed psychiatrists examined the defendant and reported that he was competent to stand trial.

### IV. *Grand Jury Testimony*

The trial court denied part of Hadley's motion *in limine*, which sought to bar evidence during trial of any mental or emotional illness suffered by him. Hadley later sought to prevent admission of his grand jury testimony in which he called family members "impostors," accused them of poisoning him years ago, and stated that they were framing him for his mother's murder through lies and bribery. Hadley claims the grand jury testimony was prejudicial and irrelevant because it raised the issue of insanity when that defense had not been entered. He further argues that the prosecution failed to lay a proper foundation showing a particularized need for the grand jury testimony which outweighed its prejudicial impact.

■ The ruling on the motion *in limine* is not appealable in itself because it is not a final ruling on the admissibility of evidence.

"The motion serves merely to prevent the display of potentially prejudicial matter to the jury until the trial court has had the opportunity to rule on the admissibility of the evidence within the context of the trial itself. (citations omitted.) Thus, the error, if it is created at all, is based not on the motion in *limine* but on

the admissibility of the testimony according to the rules of evidence." *Underwood v. State* (1981), Ind., 414 N.E.2d 588, 589.

Therefore, review of this issue is limited to the admission of the grand jury testimony. The grand jury testimony was relevant and material to show motive. "[M]otive is not an element of any of the degrees of homicide ... [but] absence of motive in a homicide case is a powerful circumstance tending to exculpate a defendant when the State's proof is entirely by circumstantial evidence...." *German v. State*, (1975) 166 Ind.App. 370, 377, 337 N.E.2d 883, 887. Furthermore, any prejudicial impact of Hadley's grand jury testimony was not great; it was cumulative of testimony of other witnesses who testified that Hadley referred to his parents and siblings as "impostors" and had accused them of poisoning him. The probative value of the grand jury testimony outweighed its prejudicial impact. Thus the trial court did not err in admitting Hadley's prior testimony.

Hadley can hardly complain of prejudice, in any case, because such damage as occurred was self-created. Hadley specifically requested an opportunity to testify before the grand jury after voluntarily waiving his right to remain silent. He was thoroughly advised of his rights and informed that his grand jury testimony could be used against him in a subsequent trial. Accordingly, his grand jury testimony was admissible at trial. *Robinson v. State* (1983), Ind., 453 N.E.2d 280.

### V. *Change of Venue*

During the hearing on Hadley's motion for change of venue, defense counsel introduced a series of newspaper, radio and television stories about Hadley and the charges against him. The trial judge refused to allow defense counsel to present three witnesses to verify the existence of community bias and prejudice. He ruled that their testimony was immaterial and self-serving opinion evidence. The judge took the motion under advisement until completion of voir dire. Defense counsel filed another motion for change of venue.

The trial judge refused to conduct a further hearing on the issue. During voir dire, five prospective jurors stated that they could not be objective about Hadley's case. They were the only prospective jurors excused for cause. After the jury was seated, the judge denied the request for change of venue.

The appellant claims he was denied his right to a fair opportunity to present evidence of community bias and prejudice so pervasive as to preclude a fair trial. A ruling on a motion for change of venue lies within the sound discretion of the trial court and will only be reversed upon a showing of an abuse of that discretion. *Barnes v. State* (1982), Ind., 435 N.E.2d 235.

The judge should have allowed the testimony of the three defense witnesses, but this error is not grounds for reversal in this case. The news stories which appellant submitted merely detailed the murder investigation and events at trial; they did not promote prejudice or bias. Hadley's bald assertions of community prejudice and bias do not persuade us that the the trial court abused its discretion in ruling that Hadley could receive a fair and impartial trial in Elkhart County.

### VI. *Conduct of Voir Dire*

The trial court denied Hadley's motion for individualized voir dire and sequestration of jurors during voir dire. Hadley contends both measures were necessary to obtain the "true feelings" of the jurors. Hadley asserts that the jurors were less willing to speak up honestly when questioned as a group.

The trial court has broad discretionary power in regulating the form and substance of voir dire examination. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299. Individualized voir dire of prospective jurors may be required where the circumstances are highly unusual or potentially damaging to the defendant. *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied*, 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809. Nonetheless, the defendant has no absolute

right to have each juror separately sequestered and questioned outside the presence of other jurors. *Smith v. State* (1984), Ind., 465 N.E.2d 1105.

■ Appellant contends that extensive pre-trial publicity concerning the poisoning constituted an unusual or damaging circumstance necessitating individualized voir dire. As support, he notes that five jurors were excused for having preconceived notions about Hadley's guilt. We are not persuaded that excusing five jurors for cause in a murder trial constitutes proof of unusual or particularly damaging pre-trial publicity.

Each juror had the duty to answer all questions of voir dire fully and truthfully. *McFarland v. State* (1979), 271 Ind. 105, 390 N.E.2d 989; *Johnston v. State* (1958), 239 Ind. 77, 155 N.E.2d 129. Hadley's argument that jurors questioned in a group are less likely to respond honestly is largely based on supposition; Hadley has not provided evidence that any of the jurors answered dishonestly or were silent when they had an affirmative duty to speak. The record of this voir dire indicates that all jurors were aware of their proper role and agreed to follow the instructions of the court. Hadley has failed to show that the trial court's denial of individualized voir and sequestration of potential jurors constituted an abuse of discretion.

### VII. *Suppression of Evidence on Identity*

Defense counsel filed a motion to suppress testimony by store employees who could identify Hadley as the purchaser of the ant poison, claiming that the testimony resulted from an impermissibly suggestive photographic line-up. The motion was still pending when trial commenced.

When the first of these witnesses took the stand, defense counsel reminded the court of the pending motion and requested a hearing outside the presence of the jury. The jury was conducted out, and both counsel questioned the witness about her identification of the defendant. The witness had been unable to identify appellant from a series of six black-and-white photographs,

five of which were disguised mug shots and one of which was a Polaroid picture of Hadley. She did identify Hadley from a second collection of color photographs. Upon interrogation by counsel, the witness asserted that her ability to identify Hadley in court arose solely from seeing him in the store and not from the pictures. When both attorneys had finished questioning the witness, the court denied Hadley's motion to suppress.

Counsel asserts that the brevity of this procedure denied him the opportunity to establish that the witness' identification was based on unduly suggestive photographic line-ups. However, there is no indication what additional witnesses might exist to establish this fact and the photographs themselves are not in the record.

The in-court identification testimony by a witness subjected to an impermissibly suggestive photo array is admissible if the prosecution presents clear and convincing evidence of an independent basis for the identification made in court. *Remsen v. State* (1981), Ind, 428 N.E.2d 241. To determine whether this independent basis exists, the trial court must examine the totality of the circumstances surrounding the witness' opportunity to observe the perpetrator at the scene of the crime, as well as facts regarding suggestive confrontation. *Id.*

■ In this case the witness testified that she remembered Hadley because she thought he was attempting to rob the store. She said his appearance was distinctive because he was large and wore an unique hairstyle. She insisted her identification was based on her view of Hadley in the store and not on the photo arrays or the detectives' comments. This was an adequate independent basis for her identification in court and the testimony was admissible, notwithstanding any impermissibly suggestive photo array.

### VIII. *Photographs*

The trial court admitted a photograph of Hadley taken at the time of his arrest. He

was shirtless and in handcuffs. The court also admitted autopsy photographs of Mrs. Hadley's body. Appellant claims all of the photographs were irrelevant and that the autopsy picture also was grisly. Admission of photographs is within the discretion of the trial court. Generally, a photograph is relevant and admissible if it depicts an object or scene which a witness would be permitted to describe through testimony. *Askew v. State* (1982), Ind., 439 N.E.2d 1350.

■ The photograph of Hadley showed the unique hair style which he wore at the time of his arrest shortly after the poisoning; his head was shaved except for a patch of hair on top of his head. (Witnesses compared Hadley's hairstyle to that worn by television actor Mr. T.) All of the store employees had described this unusual haircut while testifying about the man who purchased the ant poison. Because Hadley's hair had grown to cover his head by the time of trial, the photograph was relevant to establish identity and to corroborate or illustrate the witnesses' testimony.

■ The autopsy photographs consisted of a full-length shot of the victim's body on the autopsy table and a close-up of the face. They were admitted during the pathologist's testimony and served to illustrate that testimony. Autopsy photographs may be used for this purpose. *Shelton v. State* (1986), Ind., 490 N.E.2d 738. While autopsy photos are always somewhat disturbing, these photos were far from grisly. The trial court did not abuse its discretion in admitting either the photo of Hadley or the autopsy photos.

### IX. *Transcript of Hadley's Admissions*

■ During the habitual offender proceedings, the State sought to introduce a transcript of a prior hearing in which Hadley admitted two previous felonies. The court reporter who certified the transcript was called to testify. Hadley objected to her authentication of the transcript because she was not the keeper of the records. The trial court sustained Hadley's objection that the transcript was not prop-

erly authenticated and refused to admit the document. The prosecution hurriedly located the clerk of the Elkhart Circuit Court and called him as its next witness to authenticate the transcript. Defense counsel objected to the testimony because the clerk was not included on the State's witness list. The trial court overruled the objection and allowed the clerk to testify.

Appellant claims the judge should have refused to allow the clerk to testify because the prosecution violated discovery rules by sponsoring a surprise witness. Appellant, through his successful advocacy, forced the prosecution to detour from its intended evidentiary route. He cannot claim error simply because the detour did not become a roadblock. Moreover, the proper remedy was a request for a continuance, which defense counsel did not seek. *Miller v. State* (1980), 273 Ind. 493, 405 N.E.2d 909.

■ Appellant also claims error from admission of the transcript. He alleges the transcript was improperly certified and no foundation was laid for its admission. We need not address the merits of this issue because the transcript constituted cumulative evidence. An officer who attended the hearing testified that Hadley admitted to the prior felonies. Thus, any error from admission of the transcript was harmless.

### X. *Sufficiency of Habitual Offender Evidence*

Appellant's final argument is that there was not sufficient evidence to support the jury's finding that Hadley was an habitual offender. The prosecution submitted a copy of a docket sheet certified by the court clerk and the presiding judge which shows that Elmo T. Hadley pleaded guilty to second degree burglary on March 24, 1965, and was sentenced the next month to two to five years incarceration. The prosecution also submitted a copy of a judgment and conviction certified by the clerk and judge of the United States District Court for the Northern District of Indiana showing that Elmo T. Hadley was convicted on

April 18, 1975, of possession of an unregistered firearm and making a false statement in acquisition of a firearm, both felonies. According to the documents, he was sentenced to three years in a federal prison on each of the charges.

Hadley argues that certified copies of judgments and convictions alone are not sufficient to identify the defendant as the same person who is named in those documents, citing *Coker v. State* (1983), Ind., 455 N.E.2d 319. He contends that the State failed to adduce sufficient other evidence identifying him as the individual named in the documents. As noted above, a sheriff testified that he heard Hadley admit to committing those prior felonies during a hearing in Elkhart County, and a transcript of that hearing was also produced. This evidence was sufficient to support the jury's finding that Hadley was an habitual offender.

The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.