Reynaldo Goria RONDON, Appellant,

v.

STATE of Indiana, Appellee.

No. 1085 S 427.

Supreme Court of Indiana.

March 1, 1989.

Terrance W. Richmond, Milan, for appellant.

Linley E. Pearson, Atty. Gen., Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury found appellant guilty of two counts of Murder and recommended the imposition of the death penalty, which was imposed.

The facts are: On the night of October 10, 1984, George Chestovich heard a loud roar of an engine, then three or four loud noises coming from outside his home on Marquette Road in Lake Station. The next day Chestovich noticed that the property of his neighbor, Frank Alarcon, was in an unusual state. His gate was dislodged from the fence and his curtains, which were usually open, were closed. He also saw that the garage door was open and Alarcon's late-model green Pontiac was missing.

Chestovich went to the back door, saw that it was open and called out to Alarcon but got no answer. He noticed that the exterior of the garage and house were damaged and part of the siding had been knocked off. Concerned about 82–year–old Alarcon, Chestovich called the police. The officer and Chestovich found Alarcon sitting in the shower stall in a pool of blood, dead.

An autopsy revealed that Alarcon had been stabbed at least fifteen times all over his body and that the laceration of his heart was the cause of his death.

Linda Rosendaul testified that in the early morning hours of October 11, 1984, she was walking home from a friend's house and noticed a green four-door car driving by her very closely and slowly. One of the car doors was wrecked and standing wide open. The car passed slowly while she stood under a street light and she purposefully took a good look at the driver's face. She made an in-court identification of appellant as being the driver of the car.

Chestovich told police Alarcon had hired a small Cuban man to do yard work for him, and the same man also worked at Jansen's Fruit Market. Jansen told police that appellant worked for him, and he had observed appellant talking with Alarcon on prior occasions.

Police questioned Eva Copeland, who was appellant's live-in girl friend and the mother of two of his children. When police told her they were investigating the death of Francisco Alarcon, she became emotional and said she had two knives which appellant gave her.

At trial, Copeland testified about a conversation she had with appellant and Eladio Martinez concerning Alarcon. Occasionally Alarcon paid Copeland to clean his house. Once when Copeland was cleaning, Alarcon propositioned her to "play around" and told her that maybe one day she would get the house, but Copeland refused. When Copeland related this story to appellant, he said that he was going to get even with Alarcon, and then, speaking in Spanish, appellant and Martinez plotted to break into Alarcon's house. When Copeland asked them what they were going to do if they were caught, appellant said that he would kill Alarcon.

Everette Amiotte was an acquaintance of appellant who occasionally gave him rides because appellant did not drive. On the evening of October 10, 1984, Amiotte gave appellant and Martinez a ride to a destination near Marquette Road where they said they wanted to make a deal with a friend. At approximately 11:00 p.m., Martinez returned to Amiotte's car and said, "Let's go!" and "Dumb Reynaldo" in Spanish. Amiotte said Martinez looked nervous, sweaty, upset and smelled "like death". They drove to a gas station and appellant walked up carrying a K–Mart shopping bag. Appellant told them the car had malfunctioned and they drove down the street to the Pontiac which was dented on one side. Amiotte took appellant to an alley off Iowa Street and dropped him off.

Police searched appellant's house at 3631 Iowa Street and found a K–Mart shopping bag in the attic behind the chimney. The bag contained an identification bracelet and dog tags bearing the name "Francisco Alarcon", $8,000 in cash, and a key to a lockbox which opened a box in the Bank of Indiana rented by Francisco Alarcon. The owner of the home which appellant rented found $920 in a sock which looked to be stained with blood.

A fingerprint technician testified that the latent fingerprints recovered from the driver's side of Alarcon's car were the fingerprints and palm prints of appellant.

Appellant argues that he was denied a fair trial when certain prospective jurors were dismissed after *voir dire*. During questioning, jurors Chase, Frieson, Hernandez and Johnson indicated they were opposed to the imposition of the death penalty, and the trial court excused them for cause. The prospective jury members were questioned and each emphatically stated their opposition to the death penalty for religious reasons and stated that they could not recommend a death penalty in the penalty phase of the case. On examination by defense counsel, they remained steadfast in this opinion.

■ Prospective jurors may be excused for cause if they will not consider returning a recommendation for the death penalty.

*Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The *Witherspoon* case was clarified in the case of *Wainwright v. Witt* (1985), 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841. The Supreme Court stated that recent opinions of that Court show no ritualistic adherence to a requirement that a prospective juror make it unmistakably clear that he or she would automatically vote against the imposition of capital punishment. The Court stated the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is whether that juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.

This standard does not require that a juror's bias be proved with unmistakable clarity. Deference must be paid to the trial court who was able to see the prospective jurors and listen to their responses during *voir dire. Id.*

The statements of the prospective jurors were sufficient to give the trial court the definite impression that they would be unable to faithfully and impartially apply the law. *Id.* Therefore, we find that the trial court did not abuse its discretion in discharging these jurors.

■ We would note that, in addition to his opposition to the death penalty, prospective juror Johnson also stated that he was biased against the Lake County Police Department because he felt his son was treated unfairly when he was convicted of burglary. Thus Johnson's actual bias and his position on capital punishment were sufficient grounds for his removal from the jury. *Hopkins v. State* (1981), Ind., 429 N.E.2d 631; Ind.Code § 35–37–1–5.

Appellant further argues that he was denied a fair trial when the trial court denied his motion to individually *voir dire* each prospective jury member out of the presence of the other members as to his or her view of the death penalty. Appellant contends that by questioning the prospective members in the presence of the others,

each person's views were not fully and openly explored so that a determination under the *Wainwright* standard could be made.

The trial court has broad discretion in regulating the form and substance of *voir dire* examination. *Hadley v. State* (1986), Ind., 496 N.E.2d 67. Individualized *voir dire* may be required when circumstances are highly unusual or potentially damaging to the defendant, but he has no absolute right to have each juror separately sequestered and questioned. *Id.*

As the facts stated in the above issue indicate, though they sat in a group, each juror gave his or her independent opinion about the imposition of the death penalty. Appellant has not produced evidence which shows that any of the jurors answered dishonestly or were silent when they had a duty to speak. *Id.* Because nothing highly unusual or potentially damaging to the defendant was brought to the trial court's attention that would have required individualized examination of the prospective jurors, we find no error. *Burris v. State* (1984), Ind., 465 N.E.2d 171.

Appellant also argues that he was denied equal protection and due process of law when the trial court denied his motion to impanel a new jury prior to the penalty phase of the trial. He asserts that it was error to discharge, as a class, a group of jurors opposed to the imposition of the death penalty and contends that he should have had a new jury to hear the penalty phase of his trial.

This Court has held that when the same transaction and facts were involved, a jury could consider the evidence for guilt and then without prejudice hear the evidence on capital punishment. Because the penalty phase is not a separate guilt determination but is a continuation of the same proceeding, no new jury is needed. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied*, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860. We find no merit to appellant's argument.

Appellant contends the trial court erred by permitting a witness to identify him in court. He argues that the pretrial lineup procedure was impermissibly suggestive, thus the witness's in-court identification of him was tainted.

On direct examination, witness Rosendaul testified that she saw appellant early on October 11, 1984, driving a late-model green car which was dented on the side. She noticed the car as it passed slowly near her because the back door was wide open. She said she took a good look at the driver as he drove by at approximately 3 to 4 miles per hour as she stood under a street light. She then made an in-court identification of appellant as the driver of the car.

On cross examination, defense counsel asked Rosendaul whether she told police officers on October 11 that she could not identify the driver of the car, and she said yes.

The parties approached the bench and defense counsel moved to strike her testimony. The jury was temporarily excused, and upon further questioning Rosendaul stated that based upon her observations of appellant on October 11 she was able to make an in-court identification. She added that on the morning she talked with police officers she gave an accurate description of appellant but did not go further because she was afraid to get involved. Upon reflection, she decided that it was her civic duty to aid police. She then viewed a six-person lineup comprised of short Hispanic men. Defense counsel had earlier asked her whether police told her that a suspect was in the lineup, and at that time she said yes. However, when the jury was in recess she said she was sorry she had misstated herself, and she was only told by police that there were six men in the lineup who matched the description which she gave police.

Given this testimony, we cannot find that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification. Inconsistencies in the evidence may affect the credibility of the witness, but conflicts do not require a suppression of the identification based on suggestive

procedure. *Hazzard v. State* (1980), 274 Ind. 679, 413 N.E.2d 895.

Even if Rosendaul's pretrial identification were suspect, the in-court identification was permissible if an independent basis for the in-court identification exists. This Court will look to the totality of circumstances to determine if such an independent basis exists. *Lyons v. State* (1987), Ind., 506 N.E.2d 813.

Appellant believes his conviction should be reversed due to the admission of certain exhibits which were prejudicial and of no probative value. Cigarette butts which were found in the victim's home were admitted into evidence. Appellant objected on the ground that they were irrelevant to any issue in the case. However, there was evidence that the victim did not smoke, and appellant did.

The court also admitted pieces of brown glass found throughout the victim's home. Hair and blood were found on the glass fragments. The State introduced the exhibits to show that the victim was struck in the head with a whiskey bottle prior to being stabbed. Appellant objected on the ground that it lacked any relevance to the issues in the case.

Evidence may be admitted even where there is only a slight tendency to connect the defendant with the offense. Lack of positive proof or authentication affects only the weight of the evidence and not its admissibility. *Sons v. State* (1987), Ind., 502 N.E.2d 1331.

The hair and blood on the glass tend to show a struggle occurred in the victim's home. Bits of brown glass were found in the victim's head. Considering these facts, we find no abuse of discretion in the admission of the glass into evidence.

The State was unable to prove that the cigarette butts were the same brand which appellant smokes, nor were they able to specifically connect them to appellant or the offense in any way. Though the exhibits lacked the foundation required for admission, their admission was not reversible error. Appellant was not prejudiced by their admission because there is otherwise sufficient evidence to uphold his conviction. *Owensby v. State* (1984), Ind., 467 N.E.2d 702.

Appellant argues the trial court erred in the admission of a fingerprint card, a chrome ashtray and a chrome strip from a car. Appellant asserts that due to a break in the chain of custody their admission was erroneous.

At trial, Officer Wlekinski testified about his investigation of the victim's vehicle which was found near 27th Lane and Vanderburgh in Lake Station. At that location, he found a chrome strip and ashtray in the grass. When Wlekinski observed the car, the chrome strip and ashtray were missing from the rear door.

Officer Lach testified in regard to a chrome strip and ashtray he removed from the vehicle for comparison purposes. Lach said the exhibits were kept according to normal security measures of the Lake County Crime Laboratory.

The purpose of the rule requiring a showing of the chain of custody is to avoid any claim of substitution, tampering or mistake. The doctrine requires an adequate foundation to be laid which shows the continuous whereabouts of the exhibit beginning with the time it came into the possession of police. *McAnalley v. State* (1987), Ind., 514 N.E.2d 831.

The less an exhibit is susceptible to alteration, tampering, substitution or fungibility, the less strictly the chain-of-custody rule is applied. *Boyd, supra.* The foundation for introduction of physical evidence, the characteristics of which can be identified by eyewitness identification, is fulfilled when the witness is able to identify the item and the item has relevance to the issues in the case. *Id.*

In court, Officer Wlekinski identified the chrome strip and ashtray as those which he found in the grass. Officer Lach made an in-court identification of the second chrome strip and ashtray exhibits as those which he removed from the victim's vehicle. Because the officers were eyewitnesses and made in-court identifications

of these nonfungible items, an adequate foundation was laid for the introduction of the evidence. *Baker v. State* (1983), Ind., 449 N.E.2d 1085.

Appellant makes the same chain-of-custody argument concerning a State's exhibit which contained fingerprint impressions of appellant. At trial, an evidence technician testified that he took a fingerprint sample from appellant at the police station on October 11. The technician stated that after he obtained appellant's fingerprints he stored them in a sealed envelope which he opened in court. He identified his own signature which appeared on the exhibit and the fingerprints inside the envelope as those which he had obtained from appellant. He further testified that this exhibit was kept in the normal course of security at the Lake County Crime Laboratory. We find the chain of custody was sufficient, and the admission of this exhibit was proper.

Appellant contends the trial court erred when it failed to grant his motion for directed verdict. He asserts that the evidence is insufficient to support the jury's verdict. He argues that the testimony at trial given by Amiotte and Copeland was inherently improbable and so unreliable that it could not support a conviction.

Amiotte's testimony, in appellant's view, was inherently unreliable because Amiotte was seeking to pin the murder on someone else. The jury was well aware of Amiotte's original charge for the murder of Alarcon, his criminal record and the fact that he had been drinking on the night of the murder. It is within the jury's province to consider these facts and weigh the credibility of the witness. These facts did not render his testimony inherently unreliable.

The same is true of Copeland's testimony. The fact that the incriminating conversation Copeland heard was more difficult for her to understand because it was in Spanish went to the weight of her testimony but did not make it inherently unreliable.

A conviction may be supported on circumstantial evidence alone. *Follrad v. State* (1983), Ind., 451 N.E.2d 635. The trial court did not err in refusing to grant appellant's motion for directed verdict. There is sufficient evidence in this record to support the verdict of the jury.

Appellant argues the trial court erred when it denied his motion for severance from his codefendant. He relies on Ind. Code § 35–34–1–11(b), which states that when one defendant moves for a separate trial because the other defendant has made an out-of-court statement which refers to the moving defendant, the prosecutor must either elect a joint trial at which the statement is not admitted into evidence, a joint trial at which the statement is used only after all reference to the movant defendant has been deleted, or a separate trial for the moving defendant.

A hearing was held on appellant's motion for severance at which the State elected that appellant and Eladio Martinez be tried at a joint trial and Martinez's statement would not be admitted into evidence in the case-in-chief.

At the penalty phase of the trial, Martinez's statement was admitted into evidence. The statement, dated the day of Martinez's arrest, indicated that he understood that his statement could be used against him and his codefendants, that he made the statement voluntarily, and that he understood its contents. In the statement, he said appellant told him that he planned to rob the victim and if he resisted, he would kill him. He told in detail how appellant planned to gain entry into the victim's home, and he described appellant's knives. He also denied being involved in the murder or being at the scene of the crime at all.

On direct examination, Martinez stated that never in his life had he been in the victim's home. On cross-examination, Martinez was asked whether he stated to police that appellant was going to rob the victim and kill him if he resisted. Martinez denied giving the incriminating answers which were contained in his statement.

The trial court instructed the jury that the prior inconsistent statements could be used only for impeachment purposes and could not be used as substantive evidence against either appellant or Martinez.

 A trial court has discretion to determine whether severance is necessary to insure a fair trial, and such determination will be reversed only upon a showing of abuse of discretion. To determine whether the trial court abused its discretion, we will consider events which actually occurred at trial and not the allegations in the motion for a severance. *Parr v. State* (1987), Ind., 504 N.E.2d 1014.

 A defendant's Sixth Amendment right of confrontation is violated when a codefendant's extrajudicial statement implicating the defendant is admitted into evidence and the defendant has no opportunity to cross-examine the codefendant. However, when the confessing codefendant subjects himself by testifying to full and effective cross-examination, the defendant's Sixth Amendment right is not violated even if the codefendant denies the content of the confession. *Jenkins v. State* (1980), 274 Ind. 140, 409 N.E.2d 591. Because Martinez was available for cross-examination, we find no abuse of the trial court's discretion by its denial of appellant's motion for severance.

Appellant contends the trial court erroneously denied his motion for mistrial based on prosecutorial misconduct. During final argument, the prosecutor stated: "You can kill a man, I suppose, with a knife quickly and not need the help of someone else. Can you torture him without somebody holding him?" Earlier he had said, "That's not a lethal wound to the neck there." After appellant's objection, the trial court stated to the jury:

"The prosecutor used the word torture in his argument. There's no—there's no direct evidence that the victim was tortured. That's the kind—of thing that the jury has to decide from looking at the physical evidence that has been presented. The Prosecutor is offering that in his interpretation of what that physical evidence shows to the extent that you

may agree from examining the direct evidence that that's, in fact, the occurrence, you may, to that extent. Well, you have to make that judgment."

 The granting of a mistrial lies within the sound discretion of the trial court and will be reversed only upon a showing of clear error. *Bedwell v. State* (1985), Ind., 481 N.E.2d 1090. A mistrial is an extreme remedy and is warranted only where lesser-curative measures will not suffice. Even if error occurred, it may be harmless if the conviction is otherwise supported by independent evidence. *Wallace v. State* (1985), Ind., 486 N.E.2d 445.

 To establish that the trial court abused its discretion by denying a motion for mistrial, appellant must demonstrate that the prosecutor's misconduct placed him in a position of grave peril. *Cheney v. State* (1985), Ind., 486 N.E.2d 508. Appellant believes that the prosecutor's use of the word "torture" placed him in grave peril, and that his case is analogous to *Johnson v. State* (1983), Ind.App, 453 N.E. 2d 365 in which the Court of Appeals found the trial court erred in denying Johnson's motion for mistrial.

 In appellant's case, only circumstantial evidence existed from which one could infer that the victim was tortured. This Court has held that counsel may propound any conclusions based upon his analysis of the evidence. *Cheney, supra.* Considering the court's admonishment and the independent evidence establishing appellant's guilt, we cannot find that the prosecutor's mention of the word "torture" placed appellant in a position of grave peril which warrants a mistrial.

Appellant contends the trial court erred during the penalty phase of his trial when it allowed a police officer to testify concerning appellant's prior charge of rape. At the sentencing hearing, appellant brought forth as a mitigating factor that he had no significant history of prior criminal conduct, pursuant to Ind.Code § 35–50–2–9(c)(1). At the introduction of the police officer's testimony, appellant objected on the grounds that he was not

previously furnished with the background of the officer's testimony, that they had insufficient time to prepare for the officer's testimony, and that the testimony was hearsay. Over his objection, the officer was allowed to testify that appellant and Martinez were charged with rape in Illinois and that the charges were dropped.

Appellant now objects to the officer's testimony on the ground that arrests which do not result in convictions cannot serve as a basis for the enhancement of a criminal punishment.

■ Appellant cannot base his current allegation of error on an objection made at trial which bears no relation to his complaint on appeal. *Lewis v. State* (1987), Ind., 511 N.E.2d 1054. Without a proper objection, this issue was waived.

■ Even if appellant had objected to the testimony on the ground he now asserts, his claim would have been without merit. The trial court specified that the mitigating circumstance of his lack of a significant criminal history existed. Therefore, appellant has shown no prejudice.

Appellant argues that the imposition of the death penalty is unreasonable, unjust and inappropriate in view of the facts of the case and irregularities of the proceeding.

He first argues that the evidence is insufficient to find that he murdered the victim while committing or attempting to commit robbery. He asserts that no direct evidence exists which established appellant's participation in the victim's robbery and murder, and that the death sentence cannot be inflicted unless there is a finding that the defendant purposely and directly participated in the acts which led to the death of the victim, citing *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed. 2d 973.

The United States Supreme Court recently stated that a capital defendant himself must have a requisite degree of culpability, which requirement is met when the defendant has been a major participant in the felony committed, with reckless indifference to human life. *Tison v. Arizona*

(1987), 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127. More specifically, the Court held that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though not inevitable, lethal result. *Id.* at 157–58, 107 S.Ct. at 1688, 95 L.Ed.2d at 144.

■ The trial court found from the evidence that pursuant to their plan, appellant and Martinez arrived at the victim's residence for the express purpose of robbing and killing the 82–year–old victim. The victim was struck on the head with a bottle while he was sitting on the couch. A search of appellant's home revealed that $8,000 and the victim's personal belongings were in appellant's attic. The court also found that both Martinez and appellant were in the victim's home and the multiple wounds were the cold calculated method of guarantying the victim could make no identification.

We find that the evidence supports the imposition of the death penalty upon appellant's conviction of Murder While Committing a Robbery. The standard set forth in *Tison* has been met in this case.

■ Appellant next asserts that fundamental error occurred when the trial court appointed only one translator for both appellant and Martinez when their interests were conflicting. He complains that the court requested the translator to interpret Martinez's testimony, which left appellant without the benefit of a translator.

The record reflects that when the translator was interpreting the examination of Martinez and his testimony, the court asked the translator to speak loudly because appellant was requiring his service also. The record does not reflect that appellant had any difficulty comprehending the proceeding.

Appellant also makes the complaint that the translator was not present for the delivery of the verdict. The record, however,

does not report whether the translator was absent or present when the verdict was delivered. Appellant made no objection to the translator at trial. Failure to object to an alleged error results in waiver of that issue for purposes of appeal, unless fundamental error occurred. *Warriner v. State* (1982), Ind., 435 N.E.2d 562.

Fundamental error is error so prejudicial to the rights of appellant that he could not have a fair trial. *Crose v. State* (1985), Ind.App., 482 N.E.2d 763. Because we have no evidence that appellant had any difficulty in comprehending the translator's interpretations, we cannot find that fundamental error occurred which prohibited appellant from receiving a fair trial.

■ Appellant argues that fundamental error occurred when the trial court failed to follow Ind.Code § 35–50–2–9. Subsection (d) states that if the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing. Appellant contends that this section requires judgment to be entered on the verdict before the jury convenes for the sentencing hearing.

The jury returned its verdict of guilty, was excused, then reconvened for the sentencing hearing. The trial court correctly stated that the judgment of conviction would be the sentence. In Indiana criminal law, the terms "judgment" and "sentence" are synonymous. *Schalkle v. State* (1979), 272 Ind. 134, 396 N.E.2d 384. We cannot find that fundamental error occurred on this issue.

Appellant asserts that he was denied appropriate examination of his mental state. After the jury recommended the death penalty, appellant's counsel requested that he be examined to determine his competency and whether he could appreciate the seriousness of his case. After noting the untimeliness of the motion, the trial court granted the request and appointed two psychiatrists to examine appellant, and their conclusions were a part of the presentence investigation report.

One of the two psychiatrists' reports was included in the record, that of Dr. Berkson. He concluded that appellant was not a particularly reliable informant. He added that appellant should be tested by a Spanish-speaking individual with psychometrics for a more accurate evaluation of appellant's functioning and intelligence level. The second doctor's report is missing from the record, as is the presentence investigation report.

The trial court considered appellant's claim of previous head injuries, and his former boss's testimony that appellant's daily performance was reliable and praiseworthy. The court found there to be no indication of mental disease or defect.

Appellant now asserts that without further mental examination he was denied his right to present evidence of mitigating circumstances.

■ To exercise his right to appeal, an appellant is required to present a complete record to the reviewing court. *Smith v. State* (1981), Ind., 422 N.E.2d 1179. Without both doctors' reports in the record, we cannot make an intelligent and complete review of the trial court's determination of appellant's competency. Failure of appellant to provide a copy of the doctor's report precludes our review of the alleged error. *Spears v. State* (1980), 272 Ind. 634, 401 N.E.2d 331.

■ Appellant argues that his death sentence must be vacated due to his duplicitous convictions. Count I of appellant's information charged him with Murder and Count II charged him with Murder While Committing or Attempting to Commit Robbery. The jury returned a verdict in which they found appellant guilty of Murder in Count I and in Count II. Appellant asserts that his multiple convictions for the murder of a single victim had a prejudicial impact upon the jury in their sentencing recommendation and violated double jeopardy principles. The jury knew the facts of the case. We see no prejudicial impact.

■ Because only one murder occurred, it was error to convict appellant of both Murder and Felony Murder. *Sandlin v. State* (1984), Ind., 461 N.E.2d 1116; *Bean*

*v. State* (1978), 267 Ind. 528, 371 N.E.2d 713.

This cause is remanded. The trial court is ordered to expunge the conviction of Murder under Count I of the Information, the same having merged with the conviction under Count II of the Information, and to set the date when appellant's death sentence is to be carried out.

SHEPARD, C.J., and PIVARNIK, J., concur.

DeBRULER, J., concurring and dissenting with separate opinion in which DICKSON, J., concurs.

DEBRULER, Justice, concurring and dissenting.

In a death sentence situation it is a mitigating circumstance that the defendant "has no significant history of prior criminal conduct." I.C. 35–50–2–9(c)(1). At the sentencing hearing before the judge, over a lengthy hearsay objection, the prosecution was permitted to present the testimony of a Chicago policewoman. She stated that she had arrested appellant Rondon and his codefendant on an allegation of rape, that the victim told her over the phone that she would not proceed with charges because she was afraid, and that ultimately appellant and his codefendant were released because the charge was determined by a court to be unsupported by probable cause. The purpose of introducing this testimony was to rebut an inference of "no significant history of prior criminal conduct" which defendant had attempted to raise by showing no record of prior criminal convictions in the United States.

In the sentencing order the court states: "The following mitigating factors have been considered: 1. Standard: The defendant has no significant history of prior criminal conduct. Defendant is one of the jailed Cubans Castro released to emigrate to the United States. Through his signed immigration papers, we know Rondon was serving seven (7) years in a Cuban prison for stealing a Cuban Government vehicle. He was also charged with rape in Cook County, Illinois in 1981, but dismissed for lack of probable cause."

\* \* \* \* \* \*"

The sentencing order continues at a later point in the following words:
"The Court now finds the following aggravating factor has been proved beyond a reasonable doubt by the State of Indiana:

\* \* \* \* \* \*

In mitigation, the Court further finds the defendant has no significant history of prior criminal conduct according to our laws.
The Court further finds the mitigating circumstance is outweighed by the aggravating circumstance.

\* \* \* \* \* \*"

In the approach of the trial court, appellant's conviction in Cuba and his arrest in Chicago, while not indicative of a "significant history of criminal conduct" were nevertheless indicative of a "history of criminal conduct". It is express in the Court's finding that it did consider the Chicago arrest and the hearsay statements of the officer describing the complaints of the prosecutrix in deciding whether appellant's history of criminal conduct was significant or not. Having done so, the next step in the sentencing process was to assign weight to the mitigating and aggravating circumstances. I am unable to conclude, as does the majority of the court, that the trial court did not consider that same Chicago arrest and those hearsay statements reporting what the alleged victim had said in deciding what weight to give to the mitigating circumstance. Reason dictates that some history of criminal conduct, unlike no history of criminal conduct at all, should diminish the weight of the mitigator no significant history of prior criminal conduct. I would hold that any improper diminution in weight of a mitigator, in a death case, warrants setting aside that sentence.

I do however find integrity in the conviction.

DICKSON, J., concurs.