WILLIAM LEROY CRANE *v.* STATE OF INDIANA.

[No. 178S13.  Filed September 22, 1978.]

*Michael K. Deardorff*, Deputy Public Defender, of Kokomo, for appellant.

*Theodore L. Sendak*, Attorney General, *Richard Albert Alford*, Deputy Attorney General, for appellee.

PRENTICE, J.—Defendant (Appellant) was charged with and convicted of First Degree Murder, Ind. Code § 35-13-4-1 (Burns 1975). He was sentenced to life imprisonment and presents the following issues for review:

(1) Whether the trial court erred in admitting State's exhibit No. 8, a handgun, into evidence over objection upon grounds that it had been obtained as the result of an illegal arrest.

(2) Whether the trial court erred in admitting into evidence State's exhibits Nos. 11 and 12, Defendant's waiver of rights and statement, over objection upon grounds that they had been obtained as the result of an illegal arrest.

(3) Whether the trial court erred in denying the defendant's motion to suppress his waiver of rights and statement, which were subsequently admitted at trial.

(4) Whether the trial court erred in admitting into evidence State's exhibits Nos. 2, 3 and 4, photographs of the decedent, over objection upon grounds that they were inflammatory and prejudicial.

(5) Whether the evidence sustains the jury's finding that the defendant was sane at the time that the crime was committed.

## ISSUES I and II

Issues I and II may be consolidated since the basis for each alleged error is the legality of the defendant's arrest. The defendant contends that the officers lacked probable cause for his warrantless arrest and that any evidence obtained in consequence thereof should have been excluded.

The pertinent facts concerning the defendant's arrest were as follows:

At approximately 8:30 on the morning of February 7, 1975, the arresting officers were called to the Steel Inn, a restaurant, to investigate a shooting. Upon arriving, they found Joan Dotterer, the owner, lying dead on the floor. The delivery man, who had found the body, had attempted to contact the defendant, because he knew that he had worked for the decedent and had a key to the restaurant. He told the police that the defendant had always been at the restaurant by the time that he arrived to make his deliveries. On that particular morning, however, the defendant was neither at the restaurant nor at his home. Acting upon this information, the police went directly to the defendant's home, located across the street from the restaurant. Finding no one there, they talked to a few of the defendant's neighbors and then returned to the restaurant for further investigation.

About 9:40 a.m. they returned to the home of one of the defendant's neighbors, Frank Petosky, to ask him a few more questions. During their conversation, they were told that the defendant had stopped by Petosky's house while they were gone and admitted having shot the decedent. After receiving this information, the police went to the defendant's home to question him. When he opened the door, they asked him to step outside, which he did. He was patted down for any concealed weapons and read *Miranda* type warnings. One of the officers then asked him where the gun was, and he replied that his sister had it in the house. He invited the officers into the house and asked his sister to give them the gun, which she did. The defendant, accompanied by his sister, was then taken to police headquarters. After having been advised of his rights several times and after having signed a waiver thereof, he gave a signed statement to the police confessing to the murder of Joan Dotterer.

"Probable cause justifying an arrest without a warrant exists where facts and circumstances within the arresting

officer's knowledge or of which he had reasonably trustworthy information, would lead a reasonably prudent person under the conditions at the time to believe a crime had been committed." *Manson* v. *State*, (1967) 249 Ind. 53, 229 N.E.2d 801. *Also see, Gaddis* v. *State*, (1977) 267 Ind. 100, 368 N.E.2d 244; *Luckett* v. *State*, (1972) 259 Ind. 174, 284 N.E.2d 738.

Upon arriving at the scene and viewing the decedent, the arresting officers had good cause to believe that a crime had been committed. Being advised by persons, who appeared to have no ulterior motives, that the defendant was usually present at the scene of the crime at the time of day when the crime appeared to have been committed, that he could not be found at the time the crime was discovered but that he had subsequently appeared and admitted his guilt, the officers had probable cause for the arrest under the rule above quoted.

## ISSUE III

Prior to trial the defendant moved the court to suppress his statement on the grounds that he lacked the sufficient mental capacity and intellect to waive his rights against self-incrimination. On appeal he argues that the trial court erred in denying his motion and in admitting the confession. A hearing was held on the motion, but the transcript of that hearing has not been included in the record. Without such a record of such hearing, we are unable to review any alleged errors concerning the denial of said motion. *Bobbitt* v. *State*, (1977) 266 Ind. 164, 361 N.E. 2d 1193.

In trial the defendant also objected, upon the same grounds, to the admission of these exhibits and upon the additional grounds that the arrest was illegal and the exhibits obtained in consequence of that arrest. A hearing was had outside the presence of the jury, but the defendant advised the court that he would "* * * rely upon the facts as presented to his

honor in an earlier motion to suppress those documents." The hearing that followed was concerned primarily with the legality of the arrest. The evidence relative to the defendant's mental capacity to waive his rights was sufficient to permit the admission of the evidence. With regard to the defendant's reliance upon the evidence presented at the hearing upon the motion to suppress, that evidence is not before us.

## ISSUE IV

Several photographs of the victim taken from various angles at the scene of the shooting, were introduced by the State and admitted over the defendant's objection that they were cumulative, gruesome and used solely to excite the jury. "The relevancy of photographic evidence may be determined by an inquiry as to whether a witness would be permitted to describe verbally the objects photographed." *Patterson* v. *State,* (1975) 263 Ind. 55, 324 N.E.2d 482, and cases there cited. The decision to admit photographic evidence rests with the trial judge. He is given considerable discretion and his decision will be reversed only where it can be shown that such discretion was abused. *Jewell* v. *State,* (1974) 261 Ind. 665, 309 N.E.2d 441.

The photographs in question, although cumulative to some extent, were relevant, as illustrative of the scene of the crime and the wounds which the victim received. Additionally, we do not find them to be unnecessarily gruesome and inflammatory. *See Hoover* v. *State,* (1978) 268 Ind. 566, 376 N.E. 2d 1152.

## ISSUE V

Upon the issue of the sufficiency of the evidence of defendant's sanity, we look only to that evidence most favorable to the State and all reasonable inferences to be drawn therefrom, to determine whether there was substantial evidence of probative value to support the decision of the trier of fact. *Baum* v. *State,* (1976) 264 Ind.

421, 345 N.E.2d 831. In so doing, we will neither reweigh the evidence nor judge the credibility of the witnesses. *Beasley* v. *State*, (1977) 267 Ind. 396, 370 N.E.2d 360; *Robinson* v. *State*, (1977) 266 Ind. 604, 365 N.E.2d 1218.

Prior to trial, two psychiatrists were appointed by the court to examine the defendant. Each testified that the defendant had an I.Q. of around 77, which falls within the range of borderline mental retardation. In addition however, they found that this defect was not substantial enough to interfere either with his capacity to appreciate the wrongfulness of his acts or his ability to conform his conduct to the requirements of the law. In their opinion, the defendant was legally sane both at the time of the shooting and at the time of his trial.

Defendant argues that evidence that he was of low mentality and suffered from "personality disorder" which together affected his behavior and emotional patterns was dispositive of this issue. However such behavioral problems do not constitute insanity that will relieve one from criminal responsibility under *Hill* v. *State*, (1969) 252 Ind. 601, 251 N.E.2d 429.

Other evidence introduced at trial upon the issue of his sanity, consisted of the testimony of his two sisters. Their testimony indicated that although the defendant did poorly in school and went no further than the eighth grade, he was able to live by himself, hold a steady position as a janitor, handle his own financial affairs and save one thousand dollars. Such evidence clearly supports the jury's finding that the defendant was sane at the time of the murder.

We find no reversible error. The judgment of the trial court is affirmed.

Givan, C.J. and DeBruler, Hunter and Pivarnik, JJ., concur.

NOTE.—Reported at 380 N.E.2d 89.