**Rick O. BROWN, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 1283S445.

Supreme Court of Indiana.

Nov. 22, 1985.

Sheldon H. Cohan, Merrillville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

This is a direct appeal from a jury conviction for murder, a class A felony, Ind.Code § 35–42–1–1 (Burns 1985 Repl.). Appellant-defendant, Rick O. Brown, received a prison term of forty years.

Appellant raises the following four issues in this appeal:

(1) Whether the trial court erroneously denied his motion for a competency hearing;

(2) Whether a psychiatrist's testimony which included exculpatory statements appellant made during compulsory psychiatric evaluation may provide the evidentiary basis for Brown's affirmative defenses;

(3) Whether the trial court erroneously refused appellant's tendered instructions on lesser included offenses; and

(4) Whether appellant's emotional condition at the time he waived his constitutional rights renders his confession inadmissible.

These are the facts which tend to support the trial court's judgment. Brown and the decedent, Verna Coleman, were living together until an argument resulted in Coleman asking appellant to move out. Several days later, on October 13, 1982, appellant stole a gun from his place of employment. He then went to visit Quinne Brooks, ostensibly to buy a heater from her, and requested that Brooks invite Coleman to her house. Brooks left Coleman and appellant alone in her kitchen. Shortly thereafter Brooks heard two gunshots and then heard Coleman cry out for help. When Brooks returned to her kitchen, she found Coleman lying on the floor.

Shortly after the shooting incident, Brown turned himself in to Officer Taylor at the police station. Taylor took appellant

to an interrogation room where he remained until homicide detectives arrived. Approximately ninety minutes later, Officers Bradley and Stevens met with appellant and advised him of his *Miranda* rights. Appellant waived these rights and gave a full confession, which was admitted into evidence at his trial.

Since appellant filed a notice to interpose the insanity defense, the trial court appointed Dr. Mohammed Arshad and Dr. George A. Batacan to examine him to determine his sanity at the time of the crime. Both doctors concluded that appellant was sane at the time of the commission of the crime.

## I COMPETENCY HEARING

Appellant argues that the trial court erroneously denied his motion for a competency hearing.

A hearing was held on appellant's motion to suppress his confession. Defense counsel questioned appellant about the circumstances surrounding the crime and his confession. During this interrogation, Brown turned curt and non-responsive and the court granted defense counsel a recess. After the examination was resumed and completed, defense counsel orally moved the court to appoint a psychiatrist to examine appellant to determine whether he was competent to stand trial. Counsel claimed appellant was not in any condition to understand what he was saying, that he was not talking rationally, and that he was complaining that his brain was hurting him. The court noted that appellant's responses to questions asked were coherent, responsive, and rational. The trial court concluded that the grounds presented did not warrant a competency hearing. Appellant contends that the trial court should have delayed proceedings for a sufficient period of time to permit a competency examination in view of appellant's "bizarre" behavior on the witness stand during the suppression hearing.

A competency hearing is justified where "the court has *reasonable grounds* for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense." (Emphasis added) Ind.Code § 35-36-3-1 (Burns 1985 Repl.). The right to a competency hearing is therefore not absolute, *Goodman v. State* (1983), Ind., 453 N.E.2d 984, but is dependent upon evidence which the court determines creates a reasonable or bona fide doubt as to the defendant's competency. *Pate v. Robinson* (1966), 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815; *Perry v. State* (1984), Ind., 471 N.E.2d 270. The tests for competence to stand trial are whether the defendant has sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding and whether defendant has a rational as well as a factual understanding of the proceedings against him. *Dusky v. United States* (1960), 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824; *Johnson v. State* (1974), 262 Ind. 516, 319 N.E.2d 126. When the circumstances do not indicate that the trial court should *sua sponte* order a competency hearing, the defendant has the burden to establish that reasonable grounds exist. *Hurley v. State* (1983), Ind., 446 N.E.2d 1326.

Defense counsel suggested to the trial court that appellant's uncooperative behavior at the suppression hearing was indicative of his incompetence to stand trial. The trial judge observed appellant's demeanor, listened to his responses, and then informed both parties that he did not observe anything which would justify a competency hearing. We are not persuaded that defendant's behavior presented sufficient indicators that he was unable to consult with his attorney with a reasonable degree of rational understanding or that he did not have a factual understanding of the proceedings against him. The trial court did not abuse its discretion.

## II PSYCHIATRIC TESTIMONY AS SUBSTANTIVE EVIDENCE

Appellant claims that the trial court erroneously refused his tendered instructions on self-defense and accident. The evidentiary basis upon which these defense in-

structions were predicated was statements Brown made to Dr. Batacan during psychiatric evaluation. Appellant argues that a psychiatrist's testimony regarding such statements constitutes substantive evidence because the psychiatrist's opinion of the accused's sanity is presumably based upon the assumption that what the accused tells the psychiatrist is truthful. The State objected to the use of this testimony as substantive evidence, and the trial court ruled that such statements warranted only limited admissibility since appellant would not be testifying at trial. The jury was charged with the following instruction which is challenged by appellant:

> Statements attributed to the Defendant were testified to by Doctor Batacan and referred to in Doctor Arshads' report. These statements attributed to the Defendant were not offered for the purpose of proving the truth of the matters stated therein but rather for the sole and limited purpose of showing the statements were made during the course of the examinations by the psychiatrist.

Dr. Batacan testified during the insanity phase of the trial that appellant told him that the decedent and appellant were struggling when the gun fired. Appellant relies on *Phelan v. State* (1980), 273 Ind. 542, 406 N.E.2d 237 and *James v. State* (1980), 274 Ind. 304, 411 N.E.2d 618, to support his claim that the psychiatrist's testimony constitutes substantive evidence for his tendered instructions.

In both *Phelan* and *James* the issue was whether statements which the defendant made to a psychiatrist during a compulsory psychiatric evaluation were admissible through the psychiatrists' trial testimony. The *Phelan* Court held such statements to be admissible for the purpose of demonstrating the defendant's mental condition but not for establishing defendant's guilt. Since Frank James did not make a contemporaneous objection to the psychiatrist's testimony, this Court did not discuss the merits of whether such testimony could be used to impeach the credibility of the defendant.

■ We conclude that these statements do not constitute substantive evidence for appellant's tendered instructions. While a criminal defendant has the constitutional right not to testify at trial, the defendant has the burden of proof on any affirmative defense. In this case the appellant did not testify at trial or present other evidence to support his affirmative defenses. While defendants have the prerogative to choose the trial strategy deemed best for them, appellant cannot make exculpatory statements to a court appointed psychiatrist, present no evidence on his defense, preclude the State from cross-examining appellant's assertions made through the psychiatrist, and then expect such self-serving statements to constitute substantive evidence for his tendered instructions. The trial court properly charged the jury with an instruction limiting the purposes for which such testimony may be considered. Since there was not any evidence to support the affirmative defenses of accident and self-defense, the trial court properly refused appellant's instructions.

## III  LESSER INCLUDED OFFENSES

Appellant argues that the trial court erroneously refused his instructions on the lesser included offenses of involuntary manslaughter and reckless homicide.

The trial court's determination to instruct the jury on lesser included offenses is dependent upon a two part analysis. First, the court must examine the statutes and the charging instrument to determine whether a conviction of the greater offense requires proof of all the essential elements of the lesser offense plus the element which distinguishes the two offenses. *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208. Second, there must be evidence of probative value from which the jury could properly find defendant guilty of the lesser included offense. *Taylor v. State* (1984), Ind., 468 N.E.2d 1378. The evidence must warrant submission of the tendered lesser included offense instruction to the jury.

In the case at bar, the only substantive evidence presented was that appellant intended to kill Coleman. The trial court properly refused appellant's requested instructions.

## IV  WAIVER AND CONFESSION

Appellant argues that his waiver and confession were not voluntarily, knowingly, and intelligently made because both were given during a period of extreme emotional distress. He claims that he was in an angry, resentful, and sleep-deprived state when he waived his rights and gave a confession. He also maintains that he did not realize that his statement could be used against him in a court of law. Appellant moved to suppress his written statement and any oral testimony by the police.

During the suppression hearing, Officers Taylor, Bradley, and Stevens testified regarding the circumstances surrounding appellant's surrender and confession. At around 11:10 a.m. on October 13, 1982, Officer Taylor was sitting at his desk in the public reception area of the police station. Taylor noticed appellant and another man enter the station, apparently having a disagreement. Appellant approached Taylor and placed his pistol on the counter. Taylor asked appellant what the problem was, to which appellant responded that "he was tired of his woman messing him over and he killed her." Taylor then escorted appellant to an interrogation room.

Believing Brown to be emotionally distressed, Taylor spent some time trying to calm him. Taylor testified that at this point he would not have advised appellant of his *Miranda* rights or taken a statement because he believed that appellant's emotional state would have precluded him from using his full range of faculties to understand what he was relinquishing. Appellant appeared to calm down while Taylor was speaking with him and at 11:30 a.m. Taylor left the interrogation room. At 12:30 p.m. Officers Bradley and Stevens interrogated Brown.

Appellant appeared calm when Bradley and Stevens first came into contact with him. Bradley began to read Brown his *Miranda* rights and appellant interrupted, stating that he knew his rights. Despite this acknowledgment, Bradley handed appellant a copy of the *Miranda* rights and asked him to read along as Bradley read them aloud. The police explained these rights to appellant. Brown responded affirmatively when Bradley questioned whether he understood these rights.

After appellant signed the *Miranda* waiver form Bradley commenced interrogation. Bradley first asked appellant whether he wanted to give a statement and appellant said yes. During the taking of this statement appellant did not appear to be emotionally upset or irrational. Appellant was articulate and his answers were responsive to questions asked. Stevens testified that he would have ceased interrogation had he thought appellant was too emotional to give a statement at that time.

The forms used for both the waiver and the statement recite that the statement may be used against appellant at trial. Appellant also told Bradley that he understood his *Miranda* rights. Appellant read his five page statement and then signed the bottom of each page.

When the State cross-examined appellant during the suppression hearing, he testified that the officers read him his *Miranda* rights and explained these rights to him, that he understood these rights, and that he knew that his statement could be used against him. However, during redirect examination by defense counsel appellant stated he understood his rights but did not fully appreciate them because when he gave his statement he just wanted to get the shooting incident "off his chest".

The admissibility of a statement or confession is determined from the totality of the circumstances: was the confession given voluntarily and not through inducement, violence, threats, or other improper

influences which would have overcome the free will of the accused? *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. The question of voluntariness is one for the trial court. When reviewing a trial court's ruling on the admission of a confession, this Court does not weigh the evidence or judge the credibility of witnesses. We must determine whether there was substantial evidence of probative value to support the trial court's finding. *Washington v. State* (1982), Ind., 441 N.E.2d 1355. Where the evidence is conflicting we consider that evidence which supports the trial court's ruling and any uncontroverted evidence presented by appellant. *Thomas v. State* (1983), Ind., 443 N.E.2d 1197.

The degree of impairment of mental faculties at the time of the waiver and statement is of critical importance in determining whether a statement was given voluntarily. *Turner v. State* (1980), 273 Ind. 627, 407 N.E.2d 235. However, appellant's waiver and statement occurred an hour and a half after Taylor observed appellant in an emotionally upset state. The evidence was such that the trier of fact was entitled to conclude that the impairment of appellant's mental faculties had diminished and that his actions were voluntary and intelligent. *Rodgers v. State* (1979), 270 Ind. 372, 385 N.E.2d 1136. When the evidence indicates, as here, that appellant was coherent and in control of his faculties at the time of his waiver and statement, then his decision to waive his rights and confess was freely self-determined. *Downs v. State* (1985), Ind., 482 N.E.2d 716; *Ferry v. State* (1983), Ind., 453 N.E.2d 207. The evidence also indicates appellant was informed and understood that his statement could be used against him at trial.

Judgment affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur,

PRENTICE, J., concurs in result without opinion.