Terry Lee LOWERY, Appellant,
(Defendant Below),

v.

STATE of Indiana, Appellee,
(Plaintiff Below).

No. 02S00–8606–CR–591.

Supreme Court of Indiana.

Dec. 8, 1989.

Barrie C. Tremper and Charles F. Leonard, Chief and Deputy Public Defenders, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen. and Joseph N. Stevenson, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

A jury found the defendant, Terry Lee Lowery, guilty of murder, felony murder, aiding murder, and battery. The jury thereafter recommended imposition of the death penalty. The trial court entered judgment of conviction of murder, merging therein the convictions of felony murder, aiding murder, and battery. Finding that the evidence proved beyond a reasonable doubt that the defendant intentionally killed the victim while committing or at-

tempting to commit rape, child molesting, or criminal deviate conduct, and that the aggravating circumstance outweighed any mitigating circumstances, the trial court sentenced the defendant to death.

For purposes of this opinion, the several issues presented in this direct appeal are grouped and discussed as follows:

1. jury selection;
2. admission of defendant's statement;
3. denial of judgment on the evidence;
4. sufficiency of evidence of guilt;
5. mental capacity defense;
6. admission of photographs in penalty phase;
7. tendered penalty phase instructions;
8. sufficiency and evaluation of aggravating and mitigating circumstances; and
9. appellate review of death penalty appropriateness.

We affirm the conviction and sentence.

### 1. Jury Selection

■ The defendant first contends that the trial court's failure to grant his motion prohibiting death qualification voir dire questions, coupled with the trial court's denial of his motion to conduct individual voir dire, impermissibly prejudiced the jury and jeopardized his opportunity for a fair trial. He argues that the questioning regarding possible personal opposition to the death penalty generally, in the presence of the other jurors, "served to cultivate and condition the prospective jurors to conclude that death was the preferred penalty." Brief of Appellant at 51.

The defendant acknowledges the "death qualification" standard to be followed on voir dire in death penalty cases as established in *Witherspoon v. Illinois* (1968), 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The defendant also acknowledges this Court's long adherence to the view that prospective jurors may be excused for cause if their opposition to the death penalty is so strong that it would prevent or substantially impair the performance of their duty as jurors in accordance with their instructions and their oath. *See, e.g., Fleenor v. State* (1987), Ind., 514 N.E.2d

80, *cert. denied* (1988), — U.S. —, 109 S.Ct. 189, 102 L.Ed.2d 158; *Brewer v. State* (1986), Ind., 496 N.E.2d 371, *cert. denied* (1987), 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780; *Burris v. State* (1984), Ind., 465 N.E.2d 171, *cert. denied* (1985), 469 U.S. 1132, 105 S.Ct. 816, 83 L.Ed.2d 809; *Lamar v. State* (1977), 266 Ind. 689, 366 N.E.2d 652. The defendant further concedes that no jurors were excused for answering affirmatively to death-qualifying questions.

■ There is no absolute right afforded a defendant to have each juror separately questioned outside the presence of other jurors. *Boyd v. State* (1986), Ind., 494 N.E.2d 284, *cert. denied* (1987), 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 860; *Hadley v. State* (1986), Ind., 496 N.E.2d 67; *Smith v. State* (1984), Ind., 465 N.E.2d 1105; *Burris,* 465 N.E.2d 171. While individualized voir dire of prospective jurors may be required where the circumstances are highly unusual or potentially damaging to the defendant, *Hadley,* 496 N.E.2d 67; *Burris,* 465 N.E.2d 171, the defendant makes no showing of highly unusual or potentially damaging circumstances in his case, nor does he show how he was actually prejudiced by the trial court's denial of his motion for individualized voir dire. *Boyd,* 494 N.E.2d 284.

The defendant presents no evidence to support his claim that death qualification cultivates a jury impermissibly more conviction-prone than a jury not death-qualified. In *Lockhart v. McCree* (1986), 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137, after critically discussing numerous studies, the United States Supreme Court assumed the studies were "adequate to establish that 'death qualification' in fact produces juries somewhat more 'conviction-prone' than 'non-death-qualified' juries," but declared nonetheless, that "the Constitution does not prohibit the States from 'death qualifying' juries in capital cases." 476 U.S. at 173, 106 S.Ct. at 1764, 90 L.Ed.2d at 147.

Because the present case does not present a showing of actual prejudice or

highly unusual or potentially damaging circumstances, we conclude that the trial court's refusal to limit death-qualification voir dire or to require individualized voir dire did not constitute an abuse of discretion. We find no error on this issue.

2. Admission of Defendant's Statement

■ The defendant claims the trial court erred in admitting a videotaped statement of the defendant and thereby violated his rights to silence and assistance of counsel. The State concedes that the defendant's statement stemmed from custodial interrogation, but argues that the statement was properly admitted because no invocation of the rights to silence or assistance of counsel occurred.

In reviewing a trial court's ruling upon the admissibility of a confession, we look to the evidence before the trial court that supports its ruling. *Zook v. State* (1987), Ind., 513 N.E.2d 1217; *Dodson v. State* (1987), Ind., 502 N.E.2d 1333; *Coleman v. State* (1986), Ind., 490 N.E.2d 711. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Zook*, 513 N.E.2d 1217. The standard of appellate review of confession admissibility is the same as in other sufficiency matters. We do not weigh the evidence, but rather determine whether there was substantial evidence of probative value to support the trial court's ruling. *Dillon v. State* (1983), Ind., 454 N.E.2d 845, *cert. denied* (1984), 465 U.S. 1109, 104 S.Ct. 1617, 80 L.Ed.2d 145.

On June 24, 1985, the defendant from his jail cell requested an opportunity to speak with Detective Cummins of the Fort Wayne Police Department. The defendant was then transported from his cell to the Detective Bureau interview room and was advised of his rights, whereupon he signed a rights waiver form. The defendant concedes the initial waiver of his rights to silence and assistance of counsel, but now claims his statements later in the interrogation, before certain inculpatory matters were discussed, indicated an invocation of rights that should have caused police to immediately cease the interrogation under the guidelines of *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. According to the defendant, the failure to immediately cease the interrogation should have required the trial court to suppress the statement.

In support of this contention, the defendant directs our attention to Defendant's Exhibit A, which he identifies as "containing an analysis and timing" of the three occasions in which the defendant "indicated that he no longer wanted to be interrogated." Brief of Appellant at 54. Its contents stipulated to be true and accurate by the State, and admitted into evidence without objection, the exhibit consisted of the following:

RE: VIDEO-TAPED STATEMENT OF TERRY LEE LOWERY ON JUNE 24th, 1985 ·

I.

At 15 hrs. (3 o'clock) 43 min., the following occurs:

| At: 11 sec. | Mr. Lowery stops talking |
| 13 sec. | Mr. Lowery says "Shit" |
| 16 sec. | Mr. Lowery says "I hate this" |
| 18 sec. | Det. Robert Cummins says "Go ahead" |
| 25 sec. | Det. Robert Cummins says "What happens at that point Terry?" |
| 30 sec. | Mr. Lowery says "I really don't like talking about this" |
| 41 sec. | Mr. Lowery begins to speak |

II.

At 15 hrs. (3 o'clock) 44 min., the following occurs:

| At: 32 sec. | Mr. Terry Lowery stops talking |
| 40 sec. | Mr. Lowery says "Damn, I hate this" |
| 56 sec. | Mr. Lowery resumes speaking |

III.

At 15 hrs. (3 o'clock) 45 min., the following occurs:

| At: 57 sec. | Mr. Terry Lowery stops talking |
| 46 min., 6 sec. | Det. Robert Cummins says "Is that all?" |
| | Mr. Lowery continues statement |

Record at 330. This colloquy reveals substantial evidence of probative value to support the trial court's implicit conclusion that the defendant did not invoke his rights to silence or assistance of counsel, but merely expressed the difficulty many persons might experience in discussing one's participation in the death of another. We find that the defendant's momentary hesitations and admitted discomfort during the questioning were not sufficiently direct or emphatic to constitute an invocation of the rights to silence or counsel. *See Heald v. State* (1986), Ind., 492 N.E.2d 671. The trial court did not err on this issue.

### 3. Denial of Judgment on the Evidence

■ The defendant contends that the trial court erred in denying his motion for a directed finding (judgment on the evidence) as to Count III, felony murder, at the conclusion of the State's case-in-chief. A defendant who proceeds to produce evidence in his behalf after the trial court denies his motion for judgment on the evidence waives his right to challenge that denial. *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017; *Miller v. State* (1981), 275 Ind. 454, 417 N.E.2d 339; *Love v. State* (1980), 272 Ind. 672, 400 N.E.2d 1371. *See also Dickson v. State* (1988), Ind., 520 N.E.2d 101 (if evidence is sufficient to sustain a conviction on appeal, then denial of motion for directed finding cannot be error). He argues, however, that in a multiple-count trial, a defendant should be "allowed to present a defense to the counts of his choosing without waiving the rights to another [c]ount wherein he moved for a directed finding at the close of the State's case." Brief of Appellant at 68. He further asserts that automatic waiver should not operate to preclude a defendant from pursuing a bona fide insanity defense after denial of a motion for directed finding because the burden of proof is on the defendant to establish such defense. Ind.Code § 35–41–4–1(b).

Assuming, *arguendo*, that waiver is inapplicable, we nevertheless find that the trial court did not err in denying the defendant's motion for directed finding (judgment on the evidence) with regard to Count III at the close of the State's case-in-chief. A trial court must grant a motion for judgment on the evidence where there is a total absence of evidence on some essential issue or where the evidence is without conflict and susceptible of only the single inference favoring the defendant. *State v. Goodrich* (1987), Ind., 504 N.E.2d 1023; *White v. State* (1986), Ind., 495 N.E.2d 725; *State v. Lewis* (1981), Ind., 429 N.E.2d 1110, *cert. denied* (1982), 457 U.S. 1118, 102 S.Ct. 2931, 73 L.Ed.2d 1331.

Count III charged the defendant with felony murder, alleging, *inter alia:*

On or about the 19th day of May, 1985, in the County of Allen and in the State of Indiana, said defendant, Terry Lee Lowery, while committing rape and/or criminal deviate conduct, or aiding Johnnie A. Winners, male/white/14, DOB: 3/31/71, to commit rape and/or criminal deviate conduct, to wit: by striking Tricia L. Woods with his fists to force said Tricia L. Woods to submit to sexual intercourse and/or criminal deviate conduct with Johnnie A. Winners and said defendant and co-participant, Johnnie A. Winners, did then and there kill Tricia L. Woods, a human being, by striking at and against the body of said Tricia L. Woods with their fists and a certainly deadly weapon, to wit: a piece of wood, and did thereby inflict a mortal wound in an [sic] upon the body of said Tricia L. Woods causing her to die on May 19, 1985.

In its case-in-chief, the State presented the videotaped defendant's statement of June 24, 1985. During the course of that statement, the defendant's version was that on May 19, 1985, he and Winners drove Woods, Winners's thirteen-year-old girlfriend, to a nearby wooded area, which the three entered on foot. About twenty minutes later, the defendant observed Winners and Woods kissing. Winners then pulled a knife on Woods and requested that she have sex with him. Woods declined, and Winners threatened her that if she didn't, he would kill her. When she stated her intention to report Winners and the defendant to the police, the defendant hit her with his fist, which dropped her to the ground. At this point, Winners "had sex" with Woods and then refused to allow her to get up off the ground. Upon Winners's request, the defendant picked up two two-by-four boards "to hit her with" and handed one to Winners. The defendant then hit Woods in the back of her head with his board "and it busted in half." When Woods tried to get up, Winners hit her in the face with a two-by-four and "caved her face in." Next Winners "put a stick up her vagina and kicked it." At this point, Winners and the defendant returned to the car and drove away. Record at 542–43.

Winners's trial testimony contrasted with the foregoing description of events from the defendant's statement. According to Winners, when Woods, Winners, and the defendant arrived in the woods, the defendant asked Woods to have sex with him. When Woods refused, the defendant hit her on the back of the head with a two-by-four, then "came around and caught her right eye and busted it open," whereupon she fell to the ground. The defendant then went down, put his hand over Woods's mouth and told her to remove her clothes. She complied and the defendant "had sex with her," with Winners standing nearby. The defendant then instructed Winners to go back to the car, and the defendant joined him there ten to fifteen minutes later with blood on his hands and grass stains and blood on his pants. Winners heard the defendant admit killing Woods. Record at 571–73.

The State's evidence also included the testimony of Allen County Police Officer Joseph King to whom the defendant voluntarily spoke as King was escorting him out of the courtroom following the initial hearing. As they walked out of the courtroom, the defendant asked King, "did they say death penalty?" Officer King responded in the affirmative, whereupon the defendant told him, "I only hit her in the back of the head twice. Johnnie's the one that messed up her face. I only hit her until the two-by-four broke." Record at 606–07.

The parties stipulated that the victim died from multiple blows to the face and head. The victim's nearly naked, badly decomposed body was discovered in the woods at the area described by both the defendant and Winners.

The defendant contends that the State's evidence failed to prove rape of the victim by the defendant because of the absence of proof of vaginal penetration by the defendant. He argues that Winners's testimony that the defendant "had sex with her", is insufficient proof of penetration to prove rape. In contrast the defendant's videotaped statement provides somewhat greater detail regarding the nature of the sexual activity he claims was forced upon the victim by Winners. When asked "[w]hat kind of sex was it," the defendant replied, "Just regular sex. He—he got on top of her." The defendant also denied that there was "any other type of sex involved." Record at 544. This is sufficient to support a reasonable inference of penetration. The defendant further alleges an absence of proof that the he personally penetrated the victim's sex organ with the stick. Significantly, however, the felony murder count not only charged the defendant's personal commission of the felonies but also alternatively charged the defendant with aiding Winners to commit rape and/or criminal deviate conduct.

A person is responsible for a criminal offense if he knowingly or intentionally aids, induces, or causes another person to commit the offense. *Chinn v. State* (1987), Ind., 511 N.E.2d 1000; Ind.Code § 35-41-2-4. The defendant's statements provide the evidence that establishes the occurrence of both rape and the criminal deviate conduct allegedly inflicted by Winners upon the victim, as well as the defendant's role as intentionally aiding in these crimes. Thus there was evidence favoring the State's alternative grounds in the felony murder charge.

Moreover, while there is no evidence which directly establishes that the defendant personally committed the criminal deviate conduct, the indirect evidence is strong and substantial. It is through the videotaped defendant's statement that there is the description of the violent insertion of the stick into the victim's vagina. Winners testified that after he observed the defendant have sex with the victim, he returned to the car and did not see the defendant for ten to fifteen minutes. Winners stated that he did not observe the use of the stick to penetrate the victim's sex organ and that he first learned of this aspect of the incident shortly before trial. This evidence is clearly susceptible to the reasonable inference that it was the defendant, not Winners, who committed the criminal deviate conduct upon the victim.

The trial court did not err in denying the defendant's motion for directed finding

(judgment on the evidence) as to Count III, felony murder, at the conclusion of the State's case.

### 4. Sufficiency of Evidence of Guilt

The defendant contends that the judgment of conviction upon all counts is based upon insufficient evidence. In addressing the issue of sufficiency of evidence, we will affirm the conviction if, considering only the probative evidence and reasonable inferences supporting the verdict, without weighing evidence or assessing witness credibility, a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt. *Case v. State* (1984), Ind., 458 N.E.2d 223; *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ The defendant claims the testimony of Winners was uncorroborated and is therefore insufficient to sustain his conviction for murder. A conviction in a capital case may be based upon the uncorroborated testimony of an accomplice. *Smith v. State* (1985), Ind., 475 N.E.2d 1139. An accomplice's credibility is an issue for the jury to resolve. *Lowery v. State* (1985), Ind., 478 N.E.2d 1214, *cert. denied* (1986), 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900. Moreover, the massive wounds to the victim's face and head, in combination with the testimony of others who observed the presence of blood and grass stains on the defendant but not on Winners, tends to corroborate Winners's testimony. We reject the defendant's claim of insufficient evidence for the conviction of Count I, murder.

■ With respect to Count II, aiding murder, the defendant argues that the offenses of murder and aiding murder are inconsistent in that a conviction of one precludes a conviction on the other. We find the evidence clearly sufficient to enable a jury to find beyond a reasonable doubt that the victim's death resulted from the joint beating administered by both the defendant and Winners as alleged in Count II. To the extent Winners participated in the killing, the defendant aided in the murder.

Asserting that the evidence was insufficient to prove Count III, felony murder, the defendant presents extensive argument devoted to the exclusion as substantive evidence of the defendant's inculpatory statements to the court-appointed psychiatrists named at the request of the defendant upon his Notice to Interpose Defense of Insanity.[1] Citing *Phelan v. State* (1980), 273 Ind. 542, 406 N.E.2d 237, and *Brown v. State* (1985), Ind., 485 N.E.2d 108, the defendant argues that the inculpatory statements made during his interview with the psychiatrists were admissible only for purposes of demonstrating the defendant's mental condition, but not as substantive evidence for purposes of making a determination as to whether there is sufficient evidence to support a conviction.

From the evidence and for the reasons discussed in Issue 3 above, we find that even apart from any admissions to the psychiatrists, the evidence was sufficient to support the verdict of guilt as to the felony murder count. It is thus unnecessary for us to address whether the defendant's inculpatory statements to the psychiatrists may be considered in our review of this issue.

1. On direct examination by defense counsel, Dr. Herbert Trier, a court-appointed psychiatrist, discussed the defendant's mental process at the time of the crimes as follows:

[S]ometime during this period, he was psychotic, he did not premeditate, as far as I could determine, an intent to kill the victim. That was done for a number of reasons, may [sic] of which were probably beyond his control. The intensity of the hostility which came out, of the—you might say the murderous rage or beyond the—way beyond any kind of necessity in bringing about the victim's death and so on. I—these kinds of acts and thoughts I attributed to a—at least a passing period of insanity, which I feel, you know, this person has had a tendency to have erupt in him from time to time.

Record at 661–662. Dr. Trier's direct testimony clearly implies that the defendant did kill the victim. On cross-examination, Dr. Trier related, without objection, that the defendant admitted that he "beat her face in with a two-by-four after he said he raped her." Record at 667–669. Without objection, the prosecutor later elicited from another court-appointed psychiatrist on direct examination that the defendant had made a similar admission.

With respect to Count IV, battery, the defendant concedes that if the videotaped defendant's statement of June 24 is found admissible, there is sufficient evidence to support a Class C battery conviction. As discussed in Issue 2 above, the statement was admissible, and the evidence on this count is thus sufficient.

Because we find that a reasonable trier of fact could conclude that the defendant was guilty on each count beyond a reasonable doubt, we find the convictions supported by sufficient evidence.

### 5. Mental Capacity Defense

The defendant claims error in the failure of the jury and the trial court to find him not responsible by reason of insanity at the time of the crime or guilty but mentally ill at the time of the crime.[2] With respect to the defense of insanity, the burden of proof is upon the defendant. Ind. Code § 35–41–4–1(b). Because of the jury's verdict of guilt, the defendant is appealing from a negative determination on the issue of insanity. In determining whether a negative finding is contrary to law, this Court neither weighs the evidence nor resolves questions of credibility of witnesses. A decision will be found contrary to law only where the evidence is without conflict and leads to a single conclusion opposite the one reached at trial. *Gentry v. State* (1984), Ind., 471 N.E.2d 263; *Thomas v. State* (1981), Ind., 420 N.E.2d 1216. While one psychiatrist testified that in his opinion the defendant was insane at the time of the commission of the crime, two other psychiatrists presented a contrary opinion. Because non-expert testimony concerning a defendant's appearance and conduct may be considered on this issue, *Gentry*, 471 N.E.2d 263, we note that several witnesses testified regarding their observations of the defendant and his conduct before and after the killing occurred.

Furthermore, testimony was received from Carol Wagner whom the defendant told "if they charged him with the death penalty he would make them think he was crazy ... [s]o he could get the insanity charge [sic] instead." Record at 565.

We find that the evidence presented at trial upon the issue of the defendant's sanity was in conflict and did not lead inalterably to a conclusion that the defendant was not responsible by reason of insanity. The jury's failure to find in favor of the insanity defense was not contrary to law. We also reject defendant's claim that the convictions were defective because of the failure to find the defendant "guilty but mentally ill." Such a finding is not a defense to a crime. *Truman v. State* (1985), Ind., 481 N.E.2d 1089. It is therefore unnecessary for us to evaluate whether the jury's failure to return this verdict was contrary to law.

### 6. Admission of Photographs in Penalty Phase

The defendant argues that the trial court erred in admitting State's Exhibits 14 and 15 into evidence during the penalty phase of his trial. These exhibits were photographs of the deceased victim's body as discovered in the woods approximately thirty days after her death. The two photographs depicted close-ups of the body from two different angles, and showed the stick found lying on the ground between the victim's legs. The defendant claims the photographs were not relevant or material because the jury had already convicted defendant of felony murder; thus, the State's burden of proving beyond a reasonable doubt at least one aggravating circumstance was satisfied. Moreover, defendant claims that even if the photographs were relevant and material, those characteristics were greatly outweighed by the prejudicial and inflammatory nature of the photographs. The State responds that the pho-

---

**2.** Ind.Code § 35–36–2–3 provides: "In all cases in which the defense of insanity is interposed, the jury (or the court if tried by it) shall find whether the defendant is: (1) Guilty; (2) Not Guilty; (3) Not responsible by reason of insanity at the time of the crime; or (4) Guilty but mentally ill at the time of the crime." The term

"mentally ill" means "having a psychiatric disorder which substantially disturbs a person's thinking, feeling, or behavior and impairs a person's ability to function; 'mentally ill' also includes having any mental retardation." Ind. Code § 35–36–1–1.

tographs of the decomposed body were relevant because they revealed the placement of a stick in the victim's vaginal area.[3]

 In *Spranger v. State* (1986), Ind., 498 N.E.2d 931, 937, *reh'g denied,* 500 N.E.2d 1170, *cert. denied* (1987), 481 U.S. 1033, 107 S.Ct. 1965, 95 L.Ed.2d 536 (quoting *Richardson v. State* (1985), Ind., 476 N.E.2d 497, 500), we said:

> [P]hotographs are admissible if they provide relevant evidence and their relevance is not outweighed by their tendency to inflame and impassion the jury against the defendant. The question necessarily becomes one of balancing these concerns, and thus the trial court has broad discretion in determining whether such photographs should be admitted in a particular case.

The trial judge's decision to admit photographic evidence will be reversed only where an abuse of discretion is shown. *Boyd,* 494 N.E.2d 284; *Crane v. State* (1978), 269 Ind. 299, 380 N.E.2d 89. The defendant must clearly show the tendency of the photographs to improperly influence the jury before we will disturb the trial judge's discretion. *Akins v. State* (1981), Ind., 429 N.E.2d 232.

The death penalty count charged that the defendant intentionally killed Woods while committing or attempting to commit rape, child molesting, or criminal deviate conduct. The jury's verdict of guilty on the felony murder count did not necessarily establish whether criminal deviate conduct was found to have been committed. As previously addressed above, the felony murder verdict could have resulted from a determination that the defendant committed only aiding rape. The verdict thus did not foreclose further evidence showing the commission of crimes other than rape as alleged aggravating circumstances.

We therefore decline to find an abuse of discretion in the admission of these photographs.

### 7. Tendered Penalty–Phase Instructions

The defendant argues that the trial court erred when it modified one of his tendered instructions and refused to give several others during the death penalty phase of his trial.

The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *Fox v. State* (1986), Ind., 497 N.E.2d 221. Instruction of the jury is generally within the discretion of the trial court, *Denton v. State* (1986), Ind., 496 N.E.2d 576, and is reviewed only for an abuse of that discretion. *Brendel v. State* (1984), Ind., 460 N.E.2d 919.

 The defendant's tendered instruction 2 regarding burden of proof included the phrase "death by electrocution." The trial court gave the instruction after deleting "by electrocution." The defendant argues he had a right to inform the jury regarding the manner of execution under the Indiana Constitution Article 1, Section 19, which provides that "[i]n all criminal cases whatever, the jury shall have the right to determine the law and the facts." Because the manner of execution is controlled by statute and cannot be varied by the judge or jury, the court's modification of the tendered instruction was not error.

 The trial court refused to give the defendant's tendered instructions 4, 5, 7, 8, 9, and 10. In reviewing the refusal of a tendered instruction, we must determine: 1) whether the tendered instruction correctly states the law; 2) whether there was evidence in the record to support the giving of the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions which are given. *Jackson v. State* (1986), Ind., 490 N.E.2d 1115.

The defendant's tendered instruction 4 and 5 advised that in order to recommend

---

**3.** During a hearing out of the presence of the jury on the defendant's motion in limine, Detective Robert Cummins testified the photographs were taken to show "the body spread-eagled with a stick or a tree limb, which appeared to be inserted into the vagina of the victim." Record at 831.

the death penalty for the defendant, the jury had to find that the charged aggravating circumstance outweighed the mitigating circumstances beyond a reasonable doubt. As discussed in Issue 8 below, we decline to depart from precedent on this issue. Tendered instructions 4 and 5 were properly refused by the trial court.

 The defendant's tendered instruction 7 provided that "[a] mitigating circumstance does not have to be proved beyond a reasonable doubt in order to be considered. You must find that a mitigating circumstance exists if there is any substantial evidence to support it." The defendant concedes the lack of authority supporting this position, but argues that it is implied by the absence of a statutory burden of proof standard for establishing mitigating circumstances, unlike the requirement of proof "beyond a reasonable doubt" for aggravating circumstances. Ind.Code § 35–50–2–9. We disagree. Such an instruction might mislead the jury into thinking that they are bound to accept any alleged mitigating circumstances even if supported by only a scintilla of evidence and strongly disputed by other evidence. The trial court correctly refused defendant's tendered instruction 7.

 The defendant's tendered instruction 8 proposed to instruct that the jurors were "bound by law to consider the following factors as evidence of mitigation," and then enumerated various factors which are not among the enumerated statutory mitigating circumstances. Apart from a very significant question of whether there was evidence to support inclusion of each of the alleged mitigating circumstances, we find that the instruction incorrectly stated the law by the use of introductory language commanding the jurors that they were "bound by law to consider each enumerated factor as evidence of mitigation," even if such factor was not established by the evidence. We further find that other instructions given by the trial court fully and properly informed the jury regarding their consideration of mitigating circumstances.

 The defendant's tendered instruction 9 would have authorized the jury to "recommend mercy for the defendant whether or not mitigating circumstances exist," and to recommend that the defendant "not be electrocuted with or without any reason whatsoever." We find that the instruction was misleading and otherwise contrary to law. To the extent it contained proper information, the substance thereof was adequately covered by other instructions. The instruction was properly refused.

 In tendered instruction 10, the defendant sought to inform the jury that capital punishment was "legal" in the United States and in the State of Indiana, and to advise them that "if you recommend the death penalty" the defendant will be executed. The defendant presents no supporting authority or cogent argument. Furthermore, the instruction is misleading, potentially confusing, and otherwise an incorrect statement of law because, following any jury recommendation of the death sentence, both the trial court and this Court are required to independently and separately determine whether the death penalty is appropriate under the circumstances. There was no error in refusing this instruction.

### 8. Sufficiency and Evaluation of Aggravating and Mitigating Circumstances

The defendant argues that the State failed to prove the existence of one or more aggravating circumstances beyond a reasonable doubt as required by Ind.Code § 35–50–2–9. The defendant argues further that assuming, *arguendo*, the State did prove the existence of one or more aggravating circumstances beyond a reasonable doubt, the death penalty is inappropriate in this case because the mitigating circumstances were not outweighed by the aggravating circumstance.

 In its Application For Death Sentence, the State charged the defendant with intentionally killing the victim while committing or attempting to commit rape, child molesting, or criminal deviate conduct. Following preliminary instructions and

opening statements in the penalty phase of the defendant's trial, all of the evidence presented during the guilt phase was stipulated into evidence for purposes of the penalty phase. In addition, the State introduced the two photographs previously discussed in this opinion, and the defendant called several witnesses to testify on his behalf. Following final arguments, instructions, and deliberations the jury returned its decision recommending that the death penalty be imposed. The trial court then ordered a pre-sentence investigation report. Upon its receipt, sentencing was conducted on December 19, 1985. The trial court entered judgment accepting the jury recommendation and imposed the death penalty. In its findings, the trial court summarized the facts underlying the conviction to be that the "defendant and the juvenile co-participant struck the victim about the head with a piece of wood while both were committing or aiding each other in committing rape and/or criminal deviate conduct of the victim, resulting in the victim's death." With respect to the charged aggravating circumstance upon which the State's death penalty count was based, the trial court found that the defendant "committed the murder by intentionally killing the victim while committing or attempting to commit rape, child molesting or criminal deviate conduct," and that the State thereby proved "beyond a reasonable doubt that at least an aggravating circumstance exists." Record at 207–08. As to mitigating circumstances, the trial court made the following express findings:

1. The defendant had significant criminal history as a juvenile and has one prior felony conviction as an adult for resisting and for which he received a two-year suspended sentence.

2. While evidence was presented to show that defendant suffers from mental illness, the evidence was clear that defendant was not under the influence of extreme mental or emotional disturbance when he committed or aided in the commission of the murder.

3. There was no evidence presented that the victim participated or consented to the defendant's conduct.

4. While evidence was presented as to a fourteen-year-old juvenile co-participant, the evidence was that defendant's actions were clearly more than that of an accomplice or a minor participant.

5. The Court does not believe that defendant, a twenty-three year-old married man, would have acted under the substantial domination of the fourteen-year-old juvenile co-participant.

6. While it is clear to the Court that defendant suffers from mental illness, it is equally as clear to the Court that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law, was not impaired as a result of mental disease or of intoxication.

7. There was no evidence of any other circumstances appropriate for consideration as mitigating circumstances as to the defendant.

Record at 207–208. The trial court concluded by expressly finding "that the State of Indiana has met its burden of proving beyond a reasonable doubt the existence of at least an aggravating circumstance and, further, that the aggravating circumstances [sic] outweigh any mitigating circumstances." Record at 209.

The defendant's argument that the State failed to prove the existence of at least one aggravating circumstance beyond a reasonable doubt reiterates the defendant's challenge to the sufficiency of evidence to support the jury's verdict in the guilt phase. He argues that such evidence was likewise insufficient to prove that the defendant intentionally killed Woods while committing or attempting to commit rape, criminal deviate conduct, or child molesting. Our discussion in Issues 3 and 4 determined that the evidence was sufficient to support the determination beyond a reasonable doubt that the defendant committed the charged crimes. With respect to felony murder, we found the evidence sufficient to prove that the defendant killed the victim while committing criminal deviate conduct. Likewise, our finding that the evidence was sufficient to prove that the defendant aided in the commission of rape or criminal devi-

ate conduct applies to the sufficiency of proof of the aggravating circumstance. The aggravating circumstance charged by the State is established in Ind.Code § 35–50–2–9(b):

> The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery.

Each act enumerated within this statutory aggravating circumstance constitutes a separate criminal offense. This is further indicated because the statute uses the language *"committing* or attempting to *commit"* and enumerates the formal names for statutory offenses. An offense is deemed committed under Indiana law when a person "knowingly or intentionally aids, induces, or causes another person to commit an offense...." Ind.Code § 35–41–2–4. Therefore, the evidence found sufficient to prove the defendant aided in the commission of rape or criminal deviate conduct is likewise sufficient to prove the offenses of rape and criminal deviate conduct which, combined with the intentional killing, constitute the charged aggravating circumstance.

██ Citing *Enmund v. Florida* (1982), 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140, the defendant contends that the Eighth Amendment forbids imposition of the death penalty on one who aids and abets a felony in which a murder is committed by others but who does not himself kill, attempt to kill or intend that a killing take place or that a lethal force be employed. This issue was further addressed in *Tison v. Florida* (1987), 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127, in which the death penalty was held to be constitutionally applied to two persons who participated in the murders of four members of a family, but did not specifically intend to kill the victims and did not inflict the fatal gunshot wounds. *Tison* stated that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement," and thereby permit application of the death penalty. 481 U.S. at

158, 107 S.Ct. at 1688, 95 L.Ed.2d at 145. The court further noted that it did "not doubt that there are some felonies as to which one could properly conclude that any major participant necessarily exhibits reckless indifference to the value of human life." *Id.* at 158 n. 12, 107 S.Ct. at 1688 n. 12, 95 L.Ed.2d at 145 n. 12.

In the instant case, we find that the evidence demonstrates that the defendant's participation in the murder of and other criminal acts upon the victim were clearly major and indicative of a reckless indifference to human life.

The defendant requests that we reconsider our recent decisions holding that it is constitutional to not require that aggravating circumstances outweigh mitigating circumstances beyond a reasonable doubt. *Spranger,* 498 N.E.2d 931; *Harris v. State* (1986), Ind., 499 N.E.2d 723, *cert. denied* (1987), 482 U.S. 909, 107 S.Ct. 2490, 96 L.Ed.2d 382; *Moore v. State* (1985), Ind., 479 N.E.2d 1264, *cert. denied,* 474 U.S. 1026, 106 S.Ct. 583, 88 L.Ed.2d 565. We decline.

The defendant contends that there was insufficient evidence to support the jury and trial court finding that the aggravating circumstance outweighed the mitigating circumstances. He argues that mitigating evidence was improperly disregarded or not accorded sufficient weight.

The trial court sentencing statement expressly addressed each of the seven mitigating circumstances listed under Ind.Code § 35–50–2–9(c), and found none to be established by the evidence. Arguing that the trial court disregarded or erroneously assessed the evidence, the defendant argues that several of the statutory mitigating circumstances were shown.

██ Notwithstanding the defendant's prior conviction of a Class D felony, the defendant argues that the trial court should have found no significant history of prior criminal conduct. We disagree. Such a finding was not compelled under this circumstance.

■ With emphasis on a variety of evidence regarding the defendant's emotional and mental problems, the defendant concedes that the evidence was in conflict as to the degree of defendant's mental illness. We find no error in the trial court's refusal to find from such evidence the statutory mitigating circumstance of *"extreme* mental or emotional disturbance *when the murder was committed."* Ind.Code § 35–50–2–9(c)(2). While noting that the defendant suffers from mental illness, the trial court similarly declined to find his condition sufficiently severe to impair his "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law," as specified by Ind.Code § 35–50–2–9(c)(6). Such a finding was not error.

■ With respect to the statutory mitigating circumstances applicable when a defendant's participation in the murder was relatively minor or when he acted under the substantial domination of another, the defendant's arguments are without merit, and the trial court's rejection of these claims is well-supported by the evidence.

■ The defendant cites three additional non-statutory circumstances in mitigation which he asserts should have been considered: the defendant's age (23), the disproportionate treatment accorded Johnnie Winners for his participation in the crime, and the defendant's turbulent childhood. While such circumstances, particularly the defendant's difficult experiences in childhood and adolescence, may have been sufficient to have been accorded recognition as a mitigating circumstance to be weighed, the trial court was not under an obligation to so find. While such evidence certainly could have been considered by a trial court as evidence in mitigation, it does not lead only to a conclusion opposite that reached by the trial court.

■ Having concluded that there were no mitigating circumstances sufficiently shown to merit evaluation as against the proven aggravating circumstance, we find that the trial court did not err in finding that the "aggravating circumstance outweighs any mitigating circumstances."

For these reasons, we reject the defendant's contention that the trial court erred in its consideration and evaluation of aggravating and mitigating circumstances.

### 9. Appellate Review of Death Penalty Appropriateness

■ Having found the trial court did not improperly reach its judgment imposing the death penalty, it is now the duty of this Court under the Constitution and statutes of Indiana, Ind. Const. Art. VII, § 4; Ind.Code § 35–50–2–9(h), to determine whether in our judgment such penalty is appropriate for this defendant under the circumstances of this case. Notwithstanding the evidence of the defendant's past mental problems and emotional difficulties, the circumstances of the defendant's behavior in the brutal commission of the murder and in the associated offenses compels us to conclude, as did the trial court, that the aggravating circumstance outweighs any mitigating circumstances. We find the sentence of death here to be appropriate.

We affirm the conviction of murder and the imposition of the sentence of death.

SHEPARD, C.J., and GIVAN and PIVARNIK, JJ., concur.

DeBRULER, J., concurs and dissents with opinion.

DeBRULER, Justice, concurring and dissenting.

As accurately pointed out by the majority, the aggravating circumstance upon which the claim for the sentence of death was based is I.C. 35–50–2–9(b), as applicable at the time of this offense, which provided:

> The defendant committed the murder by intentionally killing the victim while committing or attempting to commit arson, burglary, child molesting, criminal deviate conduct, kidnapping, rape, or robbery.

A premise behind this provision is that all who may intentionally kill are not deserving of the death penalty. The purpose of the provision is to guide the process of selecting the sub-class of those who de-

serve the death penalty from the entire class of those who have killed another intentionally. The main characteristic of this sub-class is the contemporaneous presence in the perpetrator's mind of the intent to kill and the intent to commit one of the other enumerated felonies, together with conduct toward the dual felonious ends which is motivated by both intents. It is reasonable to conclude that the legislature, in enacting this aggravator, was thinking about the burglar who, having been discovered in the home by the occupant, pulls his weapon and kills. It was thinking about the mugger who, having accosted a citizen on the street and demanded and received money, shoots and kills. It was thinking about the man who, having abducted and raped a woman, shoots and kills her. It appears much less certain to me that it was thinking about the person who intentionally kills while in the process of only aiding, inducing, or causing another person to commit a crime.

The statute on aiding and abetting provides:

A person who knowingly or intentionally, aids, induces, or causes another person to commit an offense commits that offense....

I.C. 35–41–2–4. The purpose of this statute is to expand the scope of initial, basic criminal liability to those who do not actually commit a crime, but whose misconduct is limited to inducing and facilitating the commission of crimes by others. It opens up a larger number of people to potential criminal liability, namely, family, friends, and associates, who find themselves in close relationship with one intent upon committing a crime. Such persons commonly facilitate, but do not personally participate in the commission of any element of the crime. They do not necessarily have that form of pristine criminal intent which accompanies criminal conduct, but are deemed instead to be criminally liable for the probable and natural consequences of the plan in which they have played a part. *Harris v. State* (1981), Ind., 425 N.E.2d 154. It is often said that the aider and abettor is liable *criminaliter* for that which another did in furtherance of an unlawful common object. *White v. State* (1941), 219 Ind. 290, 37 N.E.2d 937. This can be a form of vicarious criminal liability, having only tenuous connection in time and place and manner with the conduct constituting the actual offense. In Section 8 of the majority opinion, where the applicability of the aiding and abetting statute to the aggravator is discussed, the majority senses the artificiality in this construct of the law when it refers to an offense as being "deemed committed" by one who only aids or induces another human being to commit an offense. Therefore, because the aiding and abetting statute casts its net so broadly and includes so much conduct which is remote and tangential to the actual commission of crimes, I would construe I.C. 35–50–2–9(b), the aggravator in this case, to be limited to those who intentionally kill while engaged in the actual commission of one of the enumerated felonies, or while engaged in conduct constituting a substantial step toward the commission of one of the enumerated felonies.

In making the final determination of the sentence under the death sentence statute, I.C. 35–50–2–9(e), the judge must find that the State has proved beyond a reasonable doubt that at least one of the enumerated aggravating circumstances exists. In fulfillment of this requirement, the sentencing judge wrote in his sentencing order:

The testimony ... proved beyond a reasonable doubt that the defendant, Terry Lee Lowery, committed the murder by intentionally killing the victim while committing or attempting to commit rape, child molesting or criminal deviate conduct.

The court utilized the disjunctive twice in this finding. As I read this finding, it reported that the trial judge was convinced that the contemporaneous felony which accompanied the intentional killing of the victim was either an outright crime or an attempted crime, but was unable to make up his mind which it was. It also reported that the trial judge was convinced that the said contemporaneous felony was either rape, child molesting or criminal deviate conduct, but was unable to make up his

mind which it was. In my view of the law governing death sentences, this finding was insufficiently specific to satisfy the requirement that the court find one of the enumerated felonies in I.C. 35–50–2–9(b)(1) and give weight to the aggravator. The indefinite finding likewise frustrated the review by this Court mandated by I.C. 35–50–2–9(h) since we cannot know which of the crimes formed the basis for the death decision.

The sentencing order also stated:

In conclusion, the Court finds that the State of Indiana has met its burden of proving beyond a reasonable doubt the existence of at least an aggravating circumstance and, further, that the aggravating circumstances outweigh any mitigating circumstances.

It is apparent from the use of the plural noun "circumstances" that the court found more than one aggravator and determined that the weight of these multiple aggravators outweighed any mitigating circumstances. Since the court did not expressly find the existence of multiple aggravators, it was error for more than one to be used in the weighing process. *See Davis v. State* (1985), Ind., 477 N.E.2d 889.

I also believe that the sentence and the jury recommendation of death rested upon unlawful bases. Count V of the pleading called for the sentence of death. The jury received an instruction upon the existence of aggravating circumstances which quoted Count V verbatim.

That ... Lowery, while committing or attempting to commit rape, child molesting or criminal deviate conduct, did then and there intentionally kill Tricia L. Woods, a human being, by striking at and against the body of said Tricia L. Woods with his hands and a certain deadly weapon, to-wit: a piece of wood, and did thereby inflict a mortal wound in and upon the body of Tricia L. Woods, causing her to die.

The verdict of the jury read simply:

We, the Jury, recommend the death sentence be imposed upon the Defendant, Terry Lee Lowery.

The trial judge also used the offense of child molesting in his determination of the sentence, yet child molesting was added to Count V simply by inserting the words "child molesting," and there never was an allegation of what conduct constituted child molesting, nor which of the several forms of child molesting defined by I.C. 35–42–4–3 were charged. The jury received no instruction regarding the elements of the crime of child molesting either at the trial on guilt or innocence or at the sentencing phase. In these circumstances, it may be that the jury based its death recommendation upon the weight of an aggravator identified only as "child molesting."

Beyond the above defects in the sentencing process, there is the question of the sufficiency of the evidence to warrant the trial judge's conclusion, if it be one, that appellant committed or attempted to commit criminal deviate conduct by inserting a stick into the victim. The evidence was that a stick was found between the legs of the victim when her body was discovered some thirty days after her death. Appellant stated to the police that his companion, Winner, performed this atrocity. I cannot regard this evidence as sufficient to warrant a rational trier of fact in concluding to a moral certainty beyond a reasonable doubt that appellant did this. For this reason also, I would set aside the sentence of death, as the sentence may rest upon the sentencing court's belief that appellant committed or attempted to commit criminal deviate conduct when killing the victim.

Indiana law does not provide the death penalty for the entire class of those who intentionally kill without excuse or justification. Death is appropriate for those within that class when the killing is accompanied by an enumerated aggravator found to exist beyond a reasonable doubt and when the weight of that aggravator is determined to be greater than the weight of all mitigators. The judicial process of determining the existence of one of the enumerated aggravators should be carried out with the same precision and care as the judicial process of determining guilt or innocence of criminal charges. I judge that the process utilized here fell short of that

standard, and I would remand with instructions to set aside the penalty of death and impose an appropriate prison term for murder.